SOLOMON FEITLER, Appellant, *vs.* WAYNE Y. DOBBINS, Appellee.

*Opinion filed April 23, 1914.*

1. EASEMENTS—*rule where owner sells part of entire premises after arranging for light and ways.* Where the owner of entire premises arranges for light and passageways for the benefit of the different portions of the premises and afterwards the premises are severed and the title vested in separate owners, each grant will carry with it, without being specifically mentioned, the rights, burdens and advantages imposed by the owner prior to the severance.

2. SAME—*when it is error to sustain a right to easement upon payment of money.* In a proceeding to enjoin the closing up of a passageway, claimed to constitute a perpetual easement, where the complainant is either entitled to the relief absolutely or is not entitled to any relief, there is no authority for granting the relief to complainant if the latter will pay a specified sum of money to the defendant.

3. SAME—*court of equity has jurisdiction to enjoin obstruction of private easement.* A court of equity has jurisdiction to enjoin the obstruction of a private easement, but the proof of the existence of the easement must be so clear and convincing as to remove every substantial doubt as to the existence of the right claimed.

4. SAME—*when complainant is entitled to an easement.* Where the owner of two lots constructs a passageway, with gates, along the side of one lot and the same is used as the only means of reaching the rear of the.other lot, (the forepart of such lot being entirely covered by a building,) and where the owner encumbers the lot having the passageway upon it with a trust deed cover-ing such lot and expressly mentioning the easement, the easement is binding as between a purchaser of the lot, who assumed and

paid the encumbrance, and the purchaser of the other lot, who knew the existing conditions and had actual notice of the provision of the trust deed relating to the easement.

5. SAME—*when an easement is not affected by private understanding of grantor.* If the owner of two lots arranges a passageway over one lot for the benefit of the other and recognizes the existence of the easement in a trust deed covering the servient lot, which is recorded, the effect of her formal recognition of the easement, as to subsequent purchasers, is not destroyed or limited by her private understanding that the easement would cease to exist when the trust deed was canceled.

APPEAL from the Circuit Court of Cook county; the Hon. JOHN GIBBONS, Judge, presiding.

SIMEON STRAUS, and IRA E. STRAUS, for appellant.

JAMES E. WHITE, and FRANKLIN A. DENISON, for appellee.

Mr. JUSTICE VICKERS delivered the opinion of the court:

Lots 16 and 17, also known as 3755 and 3757 Wabash avenue, were formerly owned by Augusta Muller. These lots are each twenty-five feet in width, fronting on Wabash avenue, in the city of Chicago, and run east to an alley in the rear, and are located between Thirty-seventh and Thirty-eighth streets. Each of said lots was improved with a three-story flat-building. Lot 17 is immediately north of lot 16. Augusta Muller first obtained title to lot 16. Subsequently she bought lot 17. The house on lot 16 occupied the full width of the lot in front. These lots were each one hundred and twenty-five feet in length. Lot 16 had a two-story brick barn in the rear, built out to the west line of the alley. The building on lot 17 occupied the whole lot, except the south three feet thereof. This strip extended the entire length of the lot and was used as a passageway to reach the rear of the premises on lot 16. A board fence had been constructed from the north-east corner of the

building on lot 16 east upon the dividing line between the two lots to the alley. There was a gate in this fence a few feet east of the corner of the building on lot 16, which was used for ingress to and egress from the rear of the premises on said lot 16. On January 8, 1907, Augusta Muller sold lot 16 to Solomon Feitler for $8000. Subsequently, on May 11, 1910, Augusta Muller conveyed lot 17 to Wayne Y. Dobbins. Some time after Dobbins acquired title to lot 17 he caused the gate from the passageway to be closed and nailed so that it could not be used. Another gate at the east end of the passageway, which opened into the alley, was also closed under the direction of Dobbins. Feitler, the owner of lot 16, filed a bill in equity against Dobbins for a mandatory injunction requiring him to open the said gates and to permit Feitler and others having business on his premises the uninterrupted use of said gate and passageway, claiming that an easement existed in said passageway and gates as an appurtenance to lot 16. Dobbins answered the bill and denied the existence of any easement. The cause was heard in the circuit court of Cook county, and a decree was rendered granting the relief prayed for in the bill but requiring as a condition the payment of $100 by complainant for the use of said easement. Complainant excepted to that part of the decree requiring him to pay $100 and prayed an appeal to the Appellate Court for the First District. Dobbins assigned cross-errors calling in question the existence of the easement, and the Appellate Court being of the opinion that a freehold was involved, properly transferred the case to this court.

There is no foundation in the evidence for that portion of the decree which imposes the payment of $100 upon appellant as a condition upon which the relief would be granted. Appellant was either entitled to a mandatory injunction or he was not entitled thereto, and the court should have either granted the prayer of the bill unconditionally or have dismissed it for want of equity.

Aside from the question in regard to the $100 which the appellant was required by the decree to pay, the merits of the controversy are brought into question by the cross-errors assigned by the appellee. The law applicable to the situation here is, that where the owner of entire premises arranges for ways, light, etc., for the benefit of the different parts or portions of the premises, and afterwards the premises are severed and the title vested in separate owners, each grant will carry with it, without being specifically mentioned, the rights and burdens and advantages imposed by the owner prior to such severance. The doctrine is founded upon the principle that the conveyance of a thing imports a grant of it as it actually exists at the time the conveyance is made unless a contrary intention is manifested in the grant. This doctrine has often been applied by this court. *Morrison* v. *King,* 62 Ill. 30; *Clarke* v. *Gaffeney,* 116 id. 362; *Newell* v. *Sass,* 142 id. 104; *Hankins* v. *Hendricks,* 247 id. 517.

Appellee insists that the court erred in awarding the mandatory injunction, because, it is said, a court of equity will not take jurisdiction to protect a mere private easement against an obstruction or nuisance except in cases where the damage is irreparable and the right has either been established at law or proven so clearly as to be free from all substantial doubt as to the right of relief, and in this connection appellee cites and relies on *Oswald* v. *Wolf,* 129 Ill. 200, and that case establishes the rule in substantial accordance with appellee's contention. "Irreparable injury, as used in the law of injunctions," was defined by this court in *Newell* v. *Sass, supra,* and it was there said that "irreparable injury does not necessarily mean that the injury is beyond the possibility of compensation in damages nor that it must be very great, and the fact that no actual damages can be proved, so that in an action at law the jury could award nominal damages, only, often furnishes the very best reason why a court of equity should interfere in

a case where the nuisance is a continuous one." This court has frequently held that the remedy by injunction is proper in cases involving conditions such as are presented here. (*Green* v. *Oakes*, 17 Ill. 249; *City of Peoria* v. *Johnston,* 56 id. 45; *McCann* v. *Day*, 57 id. 101; *Snell* v. *Buresh*, 123 id. 151; *Newell* v. *Sass, supra; Hankins* v. *Hendricks, supra.*) In all of these cases the court recognizes the rule contended for by the appellee and announced in *Oswald* v. *Wolf, supra,* that a court of equity will not take jurisdiction of a case of this character except where the proof is clear and convincing, so as to remove every substantial doubt of the existence of the right. It becomes necessary to examine the evidence in this record to determine whether appellant has established his bill by the required degree of proof.

The evidence shows that Augusta Muller bought lot 16 in 1889 and later bought lot 17. A cement walk was put in the passageway in 1896. Prior to that time there was a wooden sidewalk between the buildings. The passageway, fence and gate were all installed and in use at the time appellant bought lot 16. Several witnesses who were familiar with appellant's premises testified that the cement passageway and gate were regularly used by grocery boys, butchers, milkmen and others who delivered goods coming in from Wabash avenue; that there was no other means of reaching the rear of the premises of appellant from Wabash avenue except to pass along this passageway and turn through the gate in the fence, which admitted one to the rear of the building. L. H. Levy testified that he was in the plumbing business during the years 1907 to 1910 and that he did plumbing in appellant's house during these years; that he was familiar with the passageway and that it was always used in going to the premises known as 3757; that the gate was open and was used to get to the rear of appellant's premises. Edward L. Sattler testified that he drove a milk wagon from 1908 to 1911 for the Bowman Dairy Company

and that he delivered milk during those years every day in the rear of these premises, and that he went through the passageway at the rear of the house and through the gate and up the back stairs; that he delivered milk there in that manner to appellant; that he always went in from Wabash avenue and that he never knew the gate to be closed during the time he made these deliveries. Testimony along the same general line was given by Louise Hellbeck, Victor Holden, Alphonse Hellbeck, May Hellbeck, and a number of other witnesses. At the time appellant purchased lot 16 it was encumbered with a deed of trust executed by Augusta Muller and her husband to Peter VanVlissingen for $4000, dated January 6, 1904, and recorded two days later. This trust deed contained the following reference to the passageway in question: "Also an easement over the south three feet of lot 17, in Harriet Farlin's subdivision aforesaid, unobstructed for light, air and access to all parts of said lot 16." Appellant assumed the payment of this trust deed as part of the consideration for his purchase of lot 16. The evidence also further shows that at the time appellee purchased lot 17 he had actual notice of the existence of the trust deed, which was then upon the records, and the clause above quoted was brought to his attention at the time the title was being examined before his purchase of lot 17. Mrs. Muller testifies that when she made the trust deed and included the easement therein she was advised that it would be null and void when the debt secured by the trust deed was paid and the trust deed released. On behalf of appellee witnesses were introduced who testified that they had some acquaintance with the premises and that they had never seen anyone use the passageway or the gate. It is not disputed that the passageway was there and that the gate was there, and that that was the only method of reaching the rear of appellant's premises, and the execution of the trust deed conveying the easement in question as appurtenant to lot 16 was a recognition, solemnly expressed by

the then owner of both lots, of the existence of the easement as an appurtenant to lot 16, the effect of which as to subsequent purchasers cannot be destroyed or limited by the private understanding of the grantor that the easement would cease to exist when the trust deed was canceled.

After a careful consideration of all the evidence in this record our conclusion is that the case made by the bill and the proofs comes clearly within the rule announced by this court in the cases above cited. Here Mrs. Muller was the owner of lots 16 and 17. While thus owning them she so arranged and used them that lot 16 derived a benefit and advantage from lot 17 of a permanent, open and feasible character. As a further evidence of such arrangement she acknowledged the existence of the passageway in favor of lot 16 in a trust deed to a third party, which was afterwards assumed and paid by appellant and of which appellee had full notice at the time he purchased lot 17. In this situation she sold and conveyed lot 16 to appellant without specifically mentioning the easement in the conveyance. The existence of this easement is highly convenient and very beneficial to the owner of lot 16. Under the law the conveyance of lot 16 carried with it the right to have the easement continued so long as the property is used for the purposes to which it was put and for which it was reasonably suitable at the time the conveyance was made. These facts all being established so clearly and satisfactorily that there can be no substantial doubt as to their existence, the appellant was entitled to the relief granted by the decree below without being required to pay any additional compensation for its enjoyment.

The decree, in so far as it requires appellant to pay $100 to appellee as a condition upon which he may have relief, is reversed. In all other respects the decree is affirmed.

*Reversed in part and affirmed.*