WALGREEN Co., Plaintiff-Appellee, v. AMERICAN NATIONAL BANK & TRUST COMPANY OF CHICAGO, as Trustee, Defendants-Appellants.

(No. 55414;

First District—March 8, 1972.

Ross, Hardies, O'Keefe, Babcock, & Parsons, and Winston, Smith, Sowers, & Pallasch, both of Chicago, (R. Marlin Smith, Richard J. Rappaport, David L. Callies, Frank O. Wetmore II, and Edward J. Wendrow, of counsel,) for appellants.

Thomas E. Keane, of Chicago, for appellee.

Mr. JUSTICE BURMAN delivered the opinion of the court:

The plaintiff, Walgreen Co., (hereinafter referred to as "Walgreen") is the lessee of a store in the Village Green Shopping Center which is owned by the American National Bank & Trust Company of Chicago, as Trustee under Trust No. 26920 (hereinafter referred to as "Village Green"). Walgreen filed this action on October 21, 1969, against Village Green and the Fotomat Corporation (hereinafter referred to as "Fotomat"), to enjoin the defendants from permitting or causing the construction of a structure of any kind on the parking area in the Village Green Shopping Center in Park Ridge, Illinois. More particularly Walgreen sought to enjoin the erection in the parking lot of a kiosk within an area of approximately 40 square feet which was to have been operated by Fotomat for the sale of photographic equipment and supplies and for the receipt of film for processing.

On the same day on which the action was filed, a temporary restraining order was entered enjoining further work on the kiosk which at that time was under construction. A default order was entered against Village Green for failure to file an answer. After a trial on the merits a decree was entered on June 17, 1970, compelling the removal of the partially completed kiosk and enjoining the defendants "from permitting or causing the construction of a building or structure or from permitting to operate or operating any business on any portion of the parking area, service areas, pedestrian malls, sidewalks, and roadways, or other areas

not specifically reserved by [Village Green]." A motion by Village Green to open the default order was denied on July 15, 1970. Village Green and Fotomat appeal from the decree of June 17, 1970, and Village Green also appeals from the order denying its motion to open the default order.

The principal issue raised on appeal is whether Village Green breached its lease with Walgreen by leasing an area in the parking lot of the Village Green Shopping center to Fotomat for the construction of a kiosk.

On June 12, 1958, Walgreen entered into a lease with the Park Ridge Shopping Center, Inc. for space in a building which was to be erected and completed as a part of the Village Green Shopping Center. The lease was to run for a term of 25 years, but it was terminable at Walgreen's option at the end of the 10th, 15th, or 20th years.

Article 7(a) of the lease provides in part, as follows:

"It is an express condition of this lease that at all times during the continuance of this lease, Landlord shall provide, maintain, repair, adequately light when necessary during Tenant's business hours, clean, supervise and keep available the Parking Areas as shown on said attached plan (which Parking Areas shall contain at least 150,000 square feet and shall provide for the parking of at least 400 automobiles), and also adequate service areas, pedestrian malls, sidewalks, curbs, roadways and other facilities appurtenant thereto. Said Parking Areas shall be for the free and exclusive use of customers, invitees and employees of Tenant and of other occupants of said Shopping Center, shall have suitable automobile entrances and exits from and to adjacent streets and roads, shall be level and shall be suitably paved and pitched to streets for surface water run off."

Under Article 7(b) Walgreen became obligated to pay a proportionate share of the cost for operating and maintaining the parking facilities in an amount based upon the area of its store in relation to the total area of the retail facilities in the shopping center.

In Article 8(a) rental of space in the shopping center by three specified proposed tenants is made an express condition of the lease and in the event that any of the proposed tenants failed to execute a lease, Walgreen was given an option to cancel and terminate its lease. In Article 8(b)(iii) Walgreen was relieved of the obligation of opening its store and paying rent prior to the time when "All the parking and other facilities described in Article 7 have been completed, paved and lighted and are available for use."

Article 26 of the lease reads in part as follows:

"This instrument shall also bind and benefit, as the case may require, the heirs, legal representatives, assigns and successors of the respective

parties, and all covenants, conditions and agreements herein contained shall be construed as covenants running with the land."

A plot plan of the proposed layout of the shopping center was attached to the lease. This plan depicted markings for 463 parking spaces, and it bore a separate legend, "PARKING FOR 400 CARS."

In July 1968, legal ownership of the shopping center was assigned to the American National Bank and Trust Company of Chicago as trustee. In September, 1968, the trustee (Village Green) and Fotomat entered into a lease under which Fotomat rented space in the parking area of the shopping center for the construction and maintenance of a kiosk. Paragraph 29 of this lease provides:

"Co-Tenant Indemnification. In the event that within a period of ninety (90) days from the date of completion of the Fotomat Island, any co-tenant occupying a portion of the entire premises comprising the shopping center institutes legal action against Lessor by reason of a valid and enforceable provision or provisions in the lease between Lessor and said co-tenant and such action is a direct result of the lease between Lessor and Lessee, Lessor shall have the right to cancel and terminate this lease and Lessee shall remove itself from said premises, restoring the parking lot of the same condition as it was prior to Lessee's occupancy as is reasonably possible.

When Walgreen learned of the Fotomat lease, it made immediate objection to Village Green which thereafter sent a notice of termination to Fotomat pursuant to Paragraph 29 of the Fotomat lease. Fotomat, nevertheless, continued construction of the kiosk until a temporary restraining order was issued on October 21, 1969.

The proposed kiosk was to be placed in a part of the shopping center which in the plan attached to the Walgreen lease was designated as a parking area. It was designed to serve customers who drove up on either side of it in motor vehicles and it was to have dimensions of 9' x 4½'. If it were completed, it would have the effect of eliminating three parking places from the parking lot which would, nevertheless, still have an area in excess of 150,000 square feet and sufficient space for over 400 parking places.

The defendants contend that the terms and conditions of the Walgreen lease was not breached as long as Village Green provided a parking lot with an area of at least 150,000 square feet and with space to park at least 400 automobiles. The defendants argue that the dimensions and boundaries of the parking area, drawn on the plot plan, which show an area in excess of 150,000 square feet were only descriptive and illustrative since Article 7(a) by stating "which Parking Areas shall contain at least 150,000 square feet and shall contain at least 400 auto-

mobiles," set forth Village Green's contractual obligation. "There is no other way to give meaningful effect to the express enunciation of the minimum square footage of the parking area, the minimum number of parking spaces it must contain, and the condition respecting the entrances and exits." The defendants additionally argue that the lease and attached plan are ambiguous and contradictory and that the ambiguity should be resolved against Walgreen, the author of the document, and against restrictions on the usage of land. It is stressed that "Although the lease has attached to it a plan, even the plan is self-contradictory. It depicts parking spaces marked off which total some 463 spaces at the same time, the plan bears the legend, *Plot Plan, Parking for 400 Cars.* This number, of course, corresponds with the specific number inserted in the body of the lease. Hence, even if the numbers in the quoted paragraph [Article 7(a)] be disregarded, the attached plan is ambiguous."

■■■ The same rules which govern the construction of written contracts apply to the construction of written leases. (*Freeland v. Edwards,* 11 Ill.2d 395, 142 N.E.2d 701.) The principal function of a court in construing a written agreement is to discern and to give effect to the intention of the parties as expressed in the language of the document when read as a whole. (*Schek v. Chicago Transit Authority,* 42 Ill.2d 362, 247 N.E.2d 886.) A court cannot remake a contract and give a litigant a better bargain than he himself was satisfied to make; and when the terms of a contract are clear and unambiguous, they must be enforced. (*Slezak v. Fleming,* 392 Ill. 387, 64 N.E.2d 734, *Abingdon Bank & Tr. Co. v. Bulkeley,* 390 Ill. 582, 62 N.E.2d 447.) It is a familiar rule of construction, however, that where the terms of an agreement are in any respect claimed to be doubtful or uncertain and the parties to it have by their own conduct, placed a construction which is reasonable, such construction will be adopted by the courts, in the event of litigation concerning it. *Cemetery Assn. v. Village of Calumet Park,* 398 Ill. 324, 75 N.E.2d 874.

■■ The language and purport of the Walgreen lease and attached plot plan, as the trial judge found, were clear and unambiguous with respect to the areas to be used for parking. Under Article 7(a) of the Walgreen lease the lessor is obligated to provide parking lots with an area of at least 150,000 square feet and with spaces for at least 400 automobiles in accordance. The plot plan set forth with exactitude the location of the retail facilities, the pedestrian mall, the sidewalks, the roadways, the service drives, the parking areas, and 463 parking places. In Article 7(b) Walgreen is obligated to pay a share of the cost of operating and maintaining the parking lots, and under Article 7(a) the customers, invitees, and employees of Walgreen and of other shopping center tenants are given free and exclusive use of the parking areas.

The lessor foresaw the possibility of a need to expand the retail facilities and as a part of the plot plan reserved the right to rearrange the interior walls of one of the buildings in the shopping center, and in addition it reserved the right to expand the retail establishments into two specified areas. No provision, however, was made for diminishing the designated number of parking lots.

Under Article 8(b)(iii) Walgreen did not become obligated to take possession of the demised premises or to pay rent until "All of the parking and other facilities described in Article 7" were completed and ready for use. All of the original retail facilities in the shopping center were developed in accordance with the plot plan, and any subsequent deviations from the plan were made with the consent of the tenants. The area which Village Green now seeks to lease to Fotomat for the construction of a kiosk was not reserved for retail expansion. It was initially included by the original lessor as part of the parking area, and it continued to be used for that purpose for over ten years.

■■ The defendants emphasize that the lease was based upon a form prepared by Walgreen's legal department and that it should be strongly construed against its drafter Walgreen. No adverse inference should be drawn from the use of the form as a first draft. The lease involved herein is not a contract of adhesion in which one party as a result of its economic power selected the language and dictated the terms to the other. There is evidence in the record of extensive negotiations between parties and their attorneys which preceded the execution of the documents and indeed the lessor proposed six pages of changes to the original draft.

After considering the documents presented we hold that the intent of the parties was to confine the sales facilities of the shopping center to those areas specifically set out or reserved in the plot plan and that Walgreen along with other tenants was granted an easement in the parking areas for ingress, egress, and parking as set out in the plan. Under Article 26 of the lease, all covenants, conditions, and agreements in the lease run with the land, and the instrument is binding upon the assigns and successors of the lessor. Village Green as a successor of the original lessor is bound by the terms and conditions of the lease, and the leasing of space of the parking lot to Fotomat was a breach of the Walgreen lease.

■■■ The defendant additionally contends that it was error to enjoin the construction of the kiosk because Walgreen failed to prove that the erection of such a structure would cause it irreparable injury. It is stressed that the completed kiosk would eliminate only three parking places and that it would have a negligible effect on the shopping center as a whole and a non-existent effect on Walgreen unless Walgreen's unstated grievance is that Fotomat is a competitor. In *Newell v. Sass,* 142

Ill. 104, 116, 31 N.E. 176, 180, the Court in affirming the issuance of an injunction which enjoined the construction of a private alley, adopted a definition of "irreparable injury" from Elliot on Roads and Streets,:

> " 'Irreparable injury,' as used in the law of injunctions, does not necessarily mean 'that the injury is beyond the possibility of compensation in damages, nor that it must be very great. And the fact that no actual damages can be proved, so that in an action at law the jury could award nominal damages, only, often furnishes the very best reason why a court of equity should interfere in a case where the nuisance is a continuous one.' "

The definition of "irreparable" was further explained in *Pradelt v. Lewis*, 297 Ill. 374, 377, 130 N.E. 785, 787, in which the Court affirmed the issuance of an injunction which compelled the removal of an encroachment by a settling and leaning building:

> "* * * as ordinarily used, the term 'irreparable' means that it cannot be repaired or restored or adequately compensated for in money or the compensation can not be safely measured; that an injury which tends to the destruction of an estate, or which is of such a character as to work the destruction of the property as it has been held and enjoyed, will be treated as irreparable."

See also: *Brandenburg v. Lager*, 272 Ill. 622, 112 N.E. 321 (enforcement of building line), *Feitler v. Dobbins*, 263 Ill. 78, 104 N.E. 1088 (obstruction of private alley).

■■ In the present case, as is pointed out above, Walgreen has an easement for ingress, egress and parking as set forth in the plot plan attached to the lease. The erection of a kiosk violates this right and eliminates three spaces which had been used for parking for over ten years. Moreover, we must note that all of the presently operating stores in the shopping center were constructed around a central pedestrian mall, and each establishment operates to attract customers to the central core. The kiosk which would be separated from the mall would not draw customers to the mall and to the other stores and could easily disrupt the established pattern of customer travel and use of the parking facilities. The deprivation of a property right, the elimination of parking spaces, and the potential disruption of travel constitute an irreparable injury.

■■ Fotomat further claims that it was not bound by the terms of the Walgreen lease because it was a lessee in good faith which rented the premises without notice of the restrictions on the use of the parking lots. We are not in accord. Under Paragraph 29 of its lease with Village Green, the lessor reserved the right under certain conditions to cancel and terminate Fotomat's lease in the event that another tenant contested Village Green's right to lease the land which up to then had been used

for parking. Fotomat knew prior to the partial construction of the kiosk (1) that Walgreen considered the erection and operation of the kiosk a violation of its 1958 lease and (2) that Village Green had attempted to cancel the lease pursuant to Paragraph 29 of its lease.

■■ Defendant Village Green contends that the trial court erred in refusing to grant its motion to open the default judgment entered against it. The only effect of a default for failure to plead is that well-pleaded allegations of the complaint are deemed admitted against the party in default. We permitted Village Green to file separate briefs and to share with Fotomat its time in oral argument. Inasmuch as we have decided the issue raised by both defendants on the merits it becomes unnecessary to decide this issue.

■■ We reject the final contention that the scope of the injunction is overly broad. It is argued that "the decree should have done no more than enjoin the construction of the Fotomat kiosk on the area shown as parking or accessways on the plot plan." The court in fashioning a remedy must grant relief which is sufficiently broad to protect the aggrieved party and to prevent needless and repetitive litigation. The injunction issued herein assures that Walgreen will have the benefit of its easement and rights under the lease.

We, therefore, conclude that the judgment of the trial court was correct, and it is accordingly affirmed.

Judgment affirmed.

DIERINGER, P. J., and ADESKO, J., concur.