THE GREAT ATLANTIC & PACIFIC TEA COMPANY, INC., Plaintiff-Appellant, *v.* LA SALLE NATIONAL BANK, Trustee, *et al.*, Defendants-Appellees.

First District (4th Division)   No. 79-295

Opinion filed October 11, 1979.

D. Calvin Sincock, of Chicago, for appellant.

Pollak, Welsh & Hoffman, Ltd., of Chicago, for appellees.

Mr. JUSTICE LINN delivered the opinion of the court:

Plaintiff, The Great Atlantic & Pacific Tea Co., Inc. (A&P), filed an action in the circuit court of Cook County to enjoin construction of a drive-in bank facility in the parking lot of a shopping center in which plaintiff maintains a store. Defendants, La Salle National Bank (La Salle), as trustee under a land trust, and Northbrook Trust & Savings Bank

(Northbrook), are, respectively, the owner and lessee of the property on which the proposed drive-in facility is to be constructed.* The trial court granted defendants' motion to dismiss the complaint with prejudice, finding that A&P had no leasehold or other possessory interest in the proposed site of the drive-in bank facility, and A&P appeals.

We reverse the dismissal of the complaint and remand the cause for further proceedings.

The property in question is part of the White Plaines Shopping Center in Northbrook, Illinois. (See attached map.) The original owner of the entire shopping center, Chicago Title & Trust Company, entered into a lease with National Tea Company for the store premises now occupied by A&P. A&P is National Tea's assignee under that original lease, dated July 20, 1967, including subsequent amendments to the lease agreement. Defendant La Salle acquired legal title to the property on which the drive-in facility is to be built through a series of mesne conveyances from the original owner. Defendant La Salle does not own the store property occupied by A&P.

On April 17, 1978, La Salle entered into a lease agreement for the subject property with Northbrook. Subsequently, Northbrook prepared to construct a drive-in facility upon its leasehold interest.

A&P objected to the construction of the facility and on February 16, 1979, it filed a two-count complaint for injunctive and other relief to prevent the construction of the drive-in bank. Count I of the complaint sought to enjoin the construction as a continuing interference with A&P's leasehold interest. Count II sought to enjoin the construction as a nuisance. Defendants moved to dismiss the complaint pursuant to sections 45 and 48 of the Civil Practice Act (Ill. Rev. Stat. 1977, ch. 110, pars. 45 and 48), on the ground that A&P's lease did not convey a leasehold interest in the subject property. The affidavit attached to the motion merely indicated that La Salle does not own the property on which the A&P store is located. After hearing argument on February 23, 1979, the trial court dismissed A&P's complaint with prejudice and A&P appealed.

The lease agreement under which A&P claims its interest in the subject property describes the leased premises as follows:

"The North 520 feet of Lot 'A' in White Plaines Unit Seven, being a Subdivision in Section 8, Township 42 North, Range 12, East of the Third Principal Meridian, in Cook County, Illinois. (Specifically the store premises to be located within the above legal description, as more particularly indicated on Plot Plan 'A'.)

---

* The Atlas Rothberg Co. is also named as a defendant; however, the record does not indicate its role in this lawsuit.

The premises under this lease include the free use of properly paved, lighted, drained, striped parking lot of approximately 84,000 square feet allowing for the parking of approximately 230 automobiles by lessee, its customers, agents and employees. See approved plot plan 'A' showing building and parking lot areas which is attached hereto and made a part hereof. Said parking lot to be used in conjunction with other customers of lessee in this development, if any, and lessor agrees to maintain, light and remove snow from all parking area."

Plot plan A depicts the store area of approximately 28,000 square feet occupied by A&P and a parking lot bearing the legend "Parking for National Tea Co. 230 cars—84,000 sq. ft. To be a part of Common Area Parking." Also shown on the plot plan are areas designated "Future Stores", "Contemplated Future Use", and "Contemplated Future Parking." The subject property, now owned by defendant La Salle, lies within an area marked on plot plan A as contemplated future parking— not within the area designated National Tea Co. (or A&P as assignee) parking. It appears from the plot plan that the store premises and adjacent parking for 230 cars were the first phase of the shopping center project.

The lease agreement further provides that "Plot Plan 'A', a copy of which is attached hereto and made a part hereof, is hereby approved by both parties," and that no changes may be made therein without the lessee's written approval.

Another provision of the lease designated "Common Area Maintenance Charges" requires that the lessee pay a prorated share of the costs of maintaining "parking areas, service areas and drives, and sidewalks. Said parking lot and common area shall include costs shall include [sic] repairs, restriping the parking lot, lighting, resurfacing, cleaning, snow removal and liability insurance." The terms of the lease are expressly made binding on the heirs, executors, administrators, successors and assigns of the original parties to the lease.

OPINION

I

Count I of the complaint purports to state a cause of action in trespass. It is plaintiff's contention that as assignee of National Tea's rights under the lease, A&P has acquired a leasehold interest in the store area specifically demised and all of the common areas of the shopping center, including the parking-lot property on which Northbrook proposes to construct its drive-in facility. The gist of the complaint is that the construction of the drive-in bank will unlawfully interfere with A&P's

leasehold interest. Defendants contend that the lease specifically demised only the store premises and the specific parking area of 84,000 square feet indicated on the plot plan, and that A&P has no interest in that area leased to Northbrook by La Salle.

■■ ■ To sustain a cause of action for trespass to real property, plaintiff must allege a wrongful interference with its actual possessory rights in the property. (See *Krejci v. Capriotti* (1973), 16 Ill. App. 3d 245, 305 N.E.2d 667; *Dobrin v. Stebbins* (1970), 122 Ill. App. 2d 387, 259 N.E.2d 405.) A lease is a conveyance of the present possession of the leasehold premises (see *Urban Investment & Development Co. v. Maurice L. Rothschild & Co.* (1975), 25 Ill. App. 3d 546, 323 N.E.2d 588; *Illinois Central R.R. Co. v. Michigan Central R.R. Co.* (1958), 18 Ill. App. 2d 462, 152 N.E.2d 627), including the benefit of easements appurtenant thereto which are reasonably necessary to the enjoyment of the premises (see *The Fair v. Evergreen Park Shopping Plaza* (1954), 4 Ill. App. 2d 454, 124 N.E.2d 649; *Vinissky v. Lazovsky* (1910), 155 Ill. App. 596; 24 Ill. L. & Prac. *Landlord & Tenant* §234 (1956)). By definition, an easement is a nonpossessory interest in land (Restatement of Property §450 (1944)), but where reasonably necessary to the beneficial use of the demised premises, it is an easement appurtenant which passes as an incident of the leased premises, and the court will grant injunctive relief to restrain interference with its use (see *Walgreen Co. v. American National Bank & Trust Co.* (1972), 4 Ill. App. 3d 549, 281 N.E.2d 462; *The Fair v. Evergreen Park Shopping Plaza* (1954), 4 Ill. App. 2d 454, 124 N.E.2d 649; *Vinissky v. Lazovsky* (1910), 155 Ill. App. 596).

■■ On a motion to dismiss a complaint for insufficiency, every intendment and fair inference is in favor of the pleadings, and if under any aspect of the facts stated the plaintiff could recover, the motion should be denied. (See *Kenneke v. First National Bank* (1978), 65 Ill. App. 3d 10, 382 N.E.2d 309; *Matchett v. Rose* (1976), 36 Ill. App. 3d 638, 344 N.E.2d 770.) A motion to dismiss should be denied if a good cause of action is stated, although not the one intended by plaintiff. (2 Nichols, Illinois Civil Practice §1413 (1961).) Although count I is denominated by plaintiff a cause of action for trespass, we find it sufficient as an action to enjoin interference with a leasehold interest, including easements appurtenant thereto, to withstand a motion to dismiss.

The nature and extent of plaintiff's interest in the subject property must be determined with reference to the lease agreement. In construing the lease, the principal function of the court is to discern and give effect to the intention of the parties to the lease as expressed in the language of the document when read as a whole. (*Goldblatt Bros. v. Addison Green Meadows, Inc.* (1972), 8 Ill. App. 3d 490, 290 N.E.2d 715.) The parties'

intent must be determined solely from the language of the lease, unless the language is ambiguous and reasonably susceptible to more than one meaning, in which case extrinsic evidence may be introduced to explain the language. See *Cory v. Minton* (1977), 49 Ill. App. 3d 312, 364 N.E.2d 311; *South Parkway Building Corp. v. South Center Department Store, Inc.* (1958), 19 Ill. App. 2d 14, 153 N.E.2d 291.

In the lease agreement attached to A&P's complaint, under the heading "Location," a parking area is described consisting of 84,000 square feet for the parking of 230 cars; however, the existence of conflicting provisions regarding the use of the common parking areas of the shopping center creates an ambiguity which defeats defendants' motion to dismiss count I. The lease specifically describes the parking lot as part of common area parking "to be used in conjunction with other customers of lessees in this development, if any * * *." If defendants' construction of the lease is accepted, A&P must share this parking area with future tenants of the shopping center, but is not reciprocally granted an interest in subsequently constructed parking lots.

This conclusion is inconsistent with the further provisions of the lease requiring A&P to pay a prorated share of the maintenance of the entire parking area, beyond that specifically described in the location provision of the lease. Keeping in mind that the 84,000 square foot parking lot was apparently the first phase of the parking area construction and the only parking existing at the time the store premises was first occupied, it is questionable whether the described parking area was the minimum required to be supplied by the developer or intended to be the entire extent of the tenant's interest in the common parking areas. No written provision provides for the tenant's right to use future parking areas, but the plot plan attached to the lease clearly shows areas reserved for "contemplated future parking," including the property which is the subject of this dispute.

The majority of the judicial opinions discussing the rights of a shopping center tenant in the common areas of the shopping area have concluded that under the particular lease involved, the tenant acquired an easement appurtenant for the use of the parking areas designated in the plot plan attached to the lease. See generally Annot., 56 A.L.R.3d 596 (1974).

In *The Fair v. Evergreen Park Shopping Plaza* (1954), 4 Ill. App. 2d 454, 124 N.E.2d 649, the court upheld a tenant's right to require the removal of a bay window constructed by another tenant of the shopping center so that it protruded into the mall area of the shopping center. The lease required the landlord to " 'construct and maintain curb cuts and driveways and *an area for parking and mall* to connect with the demised

premises (all hereinafter called "parking area") * * * to be located in accordance with [the site plan], which said site plan is incorporated herein by reference. *Landlord hereby leases and demises to tenant the parking area hereinabove described,* and such parking areas as may be added thereto from time to time hereafter * * *.'" (4 Ill. App. 2d 454, 465, 124 N.E.2d 649, 654.) Additionally, the tenant agreed to pay its proportionate share of the cost to maintain the common areas. Construing this language to give the tenant an easement appurtenant entitling the tenants to unobstructed use of the parking area, the court reasoned:

> "Every tenant in the Plaza except Walgreen and Kroger is entirely surrounded by property owned by Evergreen and has no means of ingress or egress for itself, its employees, agents, customers and invitees except upon and over property owned by Evergreen. The right of ingress and egress upon and over the property of Evergreen is essential to the full beneficial use and enjoyment of the demised premises—the part occupied by the stores of the respective tenants. It is an easement appurtenant to the demised premises and passes by a lease without any additional words. 32 Am. Jur., Landlord and Tenant, sec. 169.
>
> The easements acquired by plaintiffs were not left to implications of law. They are specifically granted and defined in the leases to the respective plaintiffs." 4 Ill. App. 2d 454, 464-65, 124 N.E.2d 649, 654.

A similar result was reached in *Walgreen Co. v. American National Bank & Trust Co.* (1972), 4 Ill. App. 3d 549, 281 N.E.2d 462, where a shopping center lessee sued to enjoin the erection of a Fotomat kiosk in an area designated for parking on the plot plan attached to its lease. There the court stated:

> "After considering the documents presented we hold that the intent of the parties was to confine the sales facilities of the shopping center to those areas specifically set out or reserved in the plot plan and that Walgreen along with other tenants was granted an easement in the parking areas for ingress, egress and parking as set out in the plan." 4 Ill. App. 3d, 549, 555, 281 N.E.2d, 462, 467; see also *Goldblatt Bros. v. Addison Green Meadows, Inc.* (1972), 8 Ill. App. 3d 490, 290 N.E.2d 715; *Gray Drug Stores, Inc. v. Foto Fair International, Inc.* (1971), 32 Ohio App. 2d 71, 288 N.E.2d 341; *W.T. Grant Co. v. Indian Trail Trading Post, Inc.* (Ky. 1967), 423 S.W.2d 251.

■■ These cases indicate that a tenant of a shopping center may acquire a protectible interest in the common areas of a shopping center with or without a specific demise in the language of the lease. The intention to

create such an interest must be evidenced by the lease provisions, and where they are ambiguous, by extrinsic evidence. Here, the question of whether A&P has acquired an easement appurtenant in the parking area of the shopping center now owned by La Salle is clearly arguable. At this stage of the proceedings the court is without the benefit of extrinsic facts which may clarify the intent of the parties to the lease, including the circumstances surrounding the execution of the lease and the conduct of the parties and other tenants with regard to the use and maintenance of the common parking areas.

■■ Although for purposes of a motion to dismiss the complaint all facts well pleaded are to be taken as true, where the pleadings raise genuine issues of fact relating to the extent of plaintiff's interest in the common parking areas, specifically the site of the proposed drive-in bank facility, it presents an issue to be resolved by the trier of fact and precludes dismissal on defense motion. (See *Sierens v. Clausen* (1975), 60 Ill. 2d 585, 328 N.E.2d 559; *Dangeles v. Marcus* (1978), 57 Ill. App. 3d 662, 373 N.E.2d 645.) Accordingly, it was error for the trial court to dismiss count I of plaintiff's complaint.

## II

■■ Plaintiff also contends that the allegations in count II are sufficient to state a cause of action for nuisance. A private nuisance is a nontrespassory invasion of another's interest in the private use and enjoyment of land. (Restatement (Second) of Torts §821D (1979).) It is an individual wrong arising from an unreasonable, unwarranted or unlawful use of one's property producing such material annoyance, inconvenience, discomfort, or hurt that the law will presume a consequent damage. (*Merriam v. McConnell* (1961), 31 Ill. App. 2d 241, 175 N.E.2d 293.) What is an unreasonable use of one's property under the circumstances, is determined by weighing the following factors:

(a) The extent of the harm involved;

(b) the character of the harm involved;

(c) the social value that the law attaches to the type of use or enjoyment invaded;

(d) the suitability of the particular use or enjoyment invaded to the character of the locality; and

(e) the burden on the person harmed or avoiding the harm.

(Restatement (Second) of Torts §827 (1979).) The weight that each factor is accorded is relative to the circumstances of the case.

■■ In count II A&P alleged that it would suffer irreparable injury from the construction and the eventual operation of the drive-in facility. It alleged that the facility would deprive it of parking spaces, and disrupt

the pattern of customer travel to and affect visibility of A&P's store. The permanent loss of parking facilities was considered an irreparable injury in *Walgreen Co. v. American National Bank & Trust Co.* (1972), 4 Ill. App. 3d 549, 556, 281 N.E.2d 462, 468, where the court stated:

> "In the present case, as is pointed out above, Walgreen has an easement for ingress, egress and parking as set forth in the plot plan attached to the lease. The erection of a kiosk violates this right and eliminates three spaces which had been used for parking for over ten years. Moreover, we must note that all of the presently operating stores in the shopping center were constructed around a central pedestrian mall, and each establishment operates to attract customers to the central core. The kiosk which would be separated from the mall would not draw customers to the mall and to the other stores and could easily disrupt the established pattern of customer travel and use of the parking facilities. The deprivation of a property right, the elimination of parking spaces, and the potential disruption of travel constitute an irreparable injury."

Because of the permanent nature of the injury alleged by A&P, we believe the allegations in count II are legally sufficient to withstand a motion to dismiss and require a comparative evaluation of the parties' conflicting interests by the trier of fact.

For the reasons stated, the order of the trial court dismissing the complaint with prejudice is reversed and the cause remanded for further proceedings consistent with this opinion.

Reversed and remanded.

JIGANTI, P. J., and JOHNSON, J., concur.

Contemplated Future Parking

Contemplated
Future

Contemplated Future Parking

Contemplated
Future Stores

Subject
Property

National Tea Co.
28,000 Sq. Ft.

Contemplated
Future

Parking for National Tea Co.
230 Cars - 84,000 Sq. Ft.
To be part of common area parking.

PLOT PLAN A