MADIGAN BROTHERS, INC., Plaintiff-Appellee, *v.* MELROSE SHOP-PING CENTER COMPANY *et al.*, Defendants (La Salle National Bank, Trustee, *et al.*, Defendants-Appellants).

First District (2nd Division)   No. 83—1648

Opinion filed April 24, 1984.

Jerome H. Torshen, Ltd., and Boorstein, Freed & Zelechowski, both of Chicago (Jerome H. Torshen and Janet F. Gerske, of counsel), for appellants.

Defrees & Fiske, of Chicago (Edward J. Griffin and Gary Schuman, of counsel), for appellee.

JUSTICE STAMOS delivered the opinion of the court:

This appeal arises from the entry of a permanent injunction against the lessor-defendants, Winston Plaza Associates, David Golstein, T.D.P. Corporation and La Salle National Bank as trustee under Trust No. 103971, on motion by the lessee-plaintiff, Madigan Brothers, Inc., for summary judgment. Defendants were enjoined, during the term of plaintiff's store lease in the Winston Park Plaza Shopping Center in Melrose Park, from constructing a restaurant or other building in the shopping center's parking area, without the prior written consent of the plaintiff.

Defendants Winston Plaza Associates and La Salle National Bank are lessors of premises in Winston Park Plaza Shopping Center in Melrose Park, Illinois. In June 1981, Winston acquired all of the rights and interest formerly held by the Chicago Melrose Park Association and the Melrose Shopping Center Company with respect to the shopping center.

Sometime prior to March 1983, defendants Walgreen Company and Wag's Restaurants of Illinois, Inc., entered into negotiations with Winston to build and operate a Wag's Restaurant in the parking area of the shopping center. The plans called for the restaurant to be located approximately 500 feet from the front of plaintiff's store.

Plaintiff Madigan Brothers, Inc., has, since 1960, leased a store in the shopping center. On March 4, 1960, when the shopping center was still being developed, plaintiff entered into a lease for 50,453 square feet of ground floor shopping space. The lease stated that the construction of the shopping center was substantially completed, but provided for the construction of an addition to plaintiff's building which, along with two other stores in that building, would constitute plaintiff's leased space. Pursuant to the lease, the construction of the addition was completed and plaintiff's store was opened in March of 1961.

Article I—B of the lease is entitled "Parking Areas and Common Areas." Section 1 of Article I—B states that, in addition to the store premises leased to plaintiff, "this lease includes the non-exclusive right to Tenant and its agents, servants, successors, assigns, licensees, invitees, customers, suppliers and patrons to use and enjoy throughout the term of this lease the 'common areas' of the Shopping Center, to-wit, the driveways, entrances, exits, roadways, parking areas, sidewalks, malls and other features and facilities provided for the general uses and purposes of the Shopping Center."

Section 2 of Article I—B sets forth in detail the landlord's duties and obligations with respect to the common areas. It provides, in part:

"The location and arrangement of said parking areas, sidewalks, pedestrian malls, entrances and exits and roadways will substantially conform with the plat attached hereto and shall be kept open at all times.

The Landlord further agrees that, at its sole cost and expense, subject to the provisions of Section 2 of Article III, it will provide, operate, manage and maintain during the term of this lease, and any extensions thereof, all of the parking areas *** together with any enlargement or rearrangement thereof required by enlarging the Shopping Center of the gross building area of the buildings thereon ***. The Landlord, at its sole cost

and expense, shall place and maintain markings on the surface of the parking area and driveways in such a manner as to provide for the orderly parking of automobiles and shall provide adequate exits and entrances with signs directing traffic in and out of said parking areas *** ."

Article XVI of the lease provides that plaintiff shall "have, hold and enjoy the demised premises and the entire Madigan building together with all other improvements and all easements, rights and appurtenances which are part of the demised premises during the full term of the lease and any extensions thereof, without hindrance or ejection by any persons lawfully claiming under Landlord."

Attached to the original lease agreement, and described in Article I—A of the lease, were exhibit A, a plot plan of the shopping center showing the leased space; exhibit B, a metes and bounds description of the shopping center; and exhibit B—1, showing "the number and area of existing and proposed automobile parking spaces in the Shopping Center together with existing and proposed driveways, entrances, exits and roadways."

Page 13 of the original lease inaccurately described the store space to be leased to plaintiff, and exhibit B—1 to the original lease inaccurately showed the plot plan of the shopping center. Six days after the original lease was signed, the parties amended the lease by executing a "Memorandum of Agreement made as of March 4, 1960, but actually made the 10th day of March,1960." The memorandum corrected page 13 of the original lease and substituted a "corrected Exhibit B—1" in place of the original exhibit B—1. Corrected exhibit B—1 showed not only the exact location of the parking area, but also indicated the specific number of parking spaces being provided in the shopping center.

In addition to the corrective modification executed on March 10, 1960, the original lease has been modified on three other occasions. Two of these modifications leased additional space to plaintiff in the building. The third modification, dated July 11, 1977, gave permission to Melrose Shopping Center Company, which was then the owner of the shopping center, to construct a bank building in the parking area of the shopping center. In exchange for permission to build the bank, the landlord gave plaintiff the right, previously denied by Article XIX of the lease, to open a new store within four miles of the shopping center.

On July 23, 1980, prior to Winston's acquisition of its interest in the shopping center, plaintiff filed a one-count complaint for mandatory injunction and other relief against Winston's predecessors in interest in the shopping center, alleging violations of certain terms of plaintiff's lease. After learning of Winston's negotiations with Walgreen, plaintiff

filed its third amended complaint, joining Winston and Walgreen as defendants and adding count VI. Plaintiff alleged in count VI that certain provisions of its lease gave it a nonexclusive easement in and to the shopping center parking areas. Plaintiff further alleged that Walgreen had entered into an agreement with one or more of the defendants whereby Walgreen and Wag's would be permitted to build a Wag's Restaurant in a portion of the parking area currently used by plaintiff's customers. Plaintiff contended that construction of the proposed Wag's Restaurant would constitute an interference with plaintiff's easement because it would, among other things, eliminate 71 parking spaces and require the use by the restaurant of 50 more. Plaintiff requested that the court enter an order temporarily and permanently enjoining defendants from building the restaurant or otherwise obstructing the parking areas of the shopping center.

Defendants admitted that they had entered into negotiations with Walgreen to build a Wag's Restaurant in an area of the shopping center which previously had been used for parking, but denied that plaintiff had any easement rights and denied any interference with any of plaintiff's rights.

Plaintiff then filed a motion for summary judgment on count VI, arguing that the lease as a matter of law granted plaintiff an easement in the parking areas designated in the attachments to the lease, and that any interference with that easement by defendants should be permanently enjoined. In addition to exhibits A, B—1 and corrected B—1 to the original lease, which were attached to the motion, plaintiff submitted several additional plot plans which demonstrated the effect the proposed construction would have on the parking areas.

Defendants opposed plaintiff's motion for summary judgment on the grounds that the landlord had reserved the right under the lease to make changes in the location or configuration of any areas used for parking, and that the lease required only that the landlord maintain the specified ratio of parking spaces to leaseable area, which would be done under defendants' construction plan. Defendants also argued that, because the proposed restaurant would eliminate less than 3% of the available parking spaces in a quadrant of the shopping center located at a considerable distance from plaintiff's stores and because the site of the proposed restaurant was seldom used for parking by the patrons of any of the stores in the shopping center, Madigan had failed to show irreparable harm and thus was not entitled to injunctive relief.

■ After a hearing on the motion for summary judgment, the trial court found that the relevant language of the lease was unambiguous and that it gave to plaintiff an easement to use and enjoy the parking

area of the shopping center throughout the term of the lease. A decree was entered enjoining defendants, during the term of plaintiff's lease, "from permitting or causing the construction of a restaurant or other building without the prior written consent of the plaintiff."

Summary judgment for a defendant is appropriate if there is no genuine issue as to any material fact and the defendant is entitled to judgment as a matter of law. (See Ill. Rev. Stat. 1981, ch. 110, par. 2—1005(c).) The interpretation of a lease is a question of law when the terms are plain and unambiguous. (See *Pioneer Trust & Savings Bank v. Lucky Stores, Inc.* (1980), 91 Ill. App. 3d 573, 575, 414 N.E.2d 1152.) "An ambiguous contract is one capable of being understood in more senses than one; an agreement obscure in meaning, through indefiniteness of expression, or having a double meaning." (*First National Bank v. Victor Comptometer Corp.* (1970), 123 Ill. App. 2d 335, 341, 260 N.E.2d 99.) We find no ambiguity as to plaintiff's rights under the lease agreement.

Article I—A of the lease agreement, as amended by the memorandum of agreement dated March 10, 1960, describes the leased premises and states that corrected exhibit B—1 annexed to the lease agreement shows "the number and area of existing and proposed automobile parking spaces in the Shopping Center together with existing and proposed driveways, entrances, exits and roadways." Corrected exhibit B—1 is a plat detailing the number and configuration of parking spaces in the shopping center. Article I—B of the lease agreement states that "[i]n addition to the premises mentioned in Article I—A hereof, this lease includes the non-exclusive right to Tenant *** to use and enjoy throughout the term of this lease the 'common areas' of the Shopping Center ***" including the parking areas. Article I—B also provides that "[t]he uses hereby granted shall attach to any and all additional common areas which Landlord may hereafter see fit to add to the Shopping Center ***." Section 2 of Article I—B states that "[t]he location and arrangement of said parking areas *** will substantially conform with the plat attached hereto and shall be kept open at all times."

Thus, the rights of plaintiff to the use and enjoyment of the shopping center's parking facilities are clearly and unambiguously set forth in the lease. The principal function of a court in construing a written contract is to discern and to give effect to the intention of the parties as expressed in the language of the document when read as a whole. (*Walgreen Co. v. American National Bank & Trust Co.* (1972), 4 Ill. App. 3d 549, 554, 281 N.E.2d 462.) When the terms of a contract are clear and unambiguous, they must be enforced. 4 Ill. App. 3d 549, 554.

After considering the documents presented, we conclude that the

intent of the parties was to grant the shopping center tenants an easement in the parking areas for ingress, egress and parking as set out in the plat. It is the law in Illinois that where no reservation by the landlord of the right to alter the common areas is made in the lease and where the site plan attached to the lease accurately and precisely delineates the common areas, the tenant has an easement to the particular configuration of common space delineated by the lease and attached plats. (See, *e.g., Walgreen Co. v. American National Bank & Trust Co.* (1972), 4 Ill. App. 3d 549, 281 N.E.2d 462; *Meadowdale Shopping Center, Inc. v. Meadowdale Lanes, Inc.* (1967), 89 Ill. App. 2d 250, 231 N.E.2d 466 (abstract); *The Fair v. Evergreen Park Shopping Plaza of Delaware, Inc.* (1954), 4 Ill. App. 2d 454, 124 N.E.2d 649.) In order to make a tenant's easement over the common areas moveable, the lease must expressly and specifically grant the landlord the right to change the arrangement of the common areas. (See *Advertising Checking Bureau, Inc. v. Canal-Randolph Associates* (1981), 101 Ill. App. 3d 140, 145, 427 N.E.2d 1039.) No such right is granted to the landlord in the instant case. Certain provisions in the lease contemplate enlargements of the shopping center, but these merely specify plaintiff's rights in such circumstances and do not specifically grant the landlord the right to rearrange the parking areas. Unlike *Advertising Checking Bureau,* there is no provision in the Madigan lease which expressly permits the landlord " '*** to change the arrangement and/or location ***' " of the common areas of the shopping center. 101 Ill. App. 3d 140, 143.

It is therefore clear that the provisions of the lease gave plaintiff a nonexclusive easement to the parking areas as they are shown in the plat attached to the lease, and that the lease contains no provisions which can be construed to make this easement moveable. We therefore find that the trial court did not err in enjoining the construction of the restaurant in the shopping center parking area without plaintiff's consent.

The decision of the circuit court is affirmed.

Affirmed.

DOWNING and PERLIN, JJ., concur.