THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
MARY JO YUTT *et al.*, Defendants-Appellants.

Third District   No. 3—91—0632

Opinion filed June 30, 1992.—Rehearing denied August 25, 1992.

J. Brian Heller, of Washington, and David Newell, of Tolono, for appellants.

Kevin W. Lyons, State's Attorney, of Peoria (John X. Breslin and Jay P. Hoffmann, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE GORMAN delivered the opinion of the court:

Defendants were convicted of criminal trespass for refusing to leave a shopping center after being asked to do so. (Ill. Rev. Stat. 1989, ch. 38, par. 21—3(a).) We affirm.

National Health Care Services of Peoria, Inc. (NHCSI), is located in the "Pioneer Square" shopping center in Peoria. The building contains numerous other commercial and professional offices. The building is surrounded by a parking lot and there is a continu-

ous sidewalk which goes all the way around the building. Each tenant's business fronts directly on this sidewalk. The building is U-shaped with NHCSI occupying most of one leg of the U.

NHCSI is a facility which performs abortions and has been a tenant of Pioneer Square since 1975. Posted in front of the facility are signs which say:

> NO TRESPASSING. PRIVATE PROPERTY. NATIONAL HEALTH CARE SERVICES OF PEORIA, IL. NO PICKETING. NO LOITERING. NO DISTRIBUTION OF ANY PRINTED MATTER. PATIENTS AND INVITEES ONLY. VIOLATORS WILL BE PROSECUTED.

On October 11, 1990, defendants Mary Jo Yutt and Rose Waller were walking up and down the sidewalk in front of NHCSI. At no time did they block any entrance, shout, carry signs, hand out literature or harass visitors. Their activities were described as simply walking and praying in a normal voice. Both defendants had conducted similar activities on the property numerous times before that date.

On the day in question, Margaret VanDuyn, NHCSI's executive director, went outside, informed the defendants that they were on private property, and asked them to leave.

When the defendants did not leave, VanDuyn went back inside and called the police. Officer William Koenig was sent to the scene and went inside to speak with VanDuyn. VanDuyn provided the officer with an addendum to NHCSI's lease. The addendum leased to NHCSI the sidewalk and parking lot extending from the portion of the building which NHCSI already leased.

Based on this information, Officer Koenig went outside and told the two defendants that they would have to leave. Officer Koenig testified that the women did not respond, but just continued praying. The officer again informed the women that they were on private property and were being asked to leave. Yutt asked Officer Koenig what the charge would be if they refused and Koenig informed her that it would be criminal trespass.

Officer Koenig once again asked the women to leave. Yutt responded by resuming praying. At that point, Officer Koenig informed Yutt that she was under arrest.

During this time Waller had started to walk away and had gotten some distance when she saw that Yutt was being arrested. Waller then returned and was again told to leave. When she did not, she was arrested.

Both defendants were found guilty of criminal trespass by a jury. Yutt was sentenced to 10 months' court supervision and ordered to perform 50 hours of public service. Waller was sentenced to 10 months' supervision and fined $100. They now appeal from those convictions.

The criminal trespass statute provides, in pertinent part:

"(a) Whoever enters upon the land or a building, other than a residence, or any part thereof of another, after receiving, prior to such entry, notice from the owner or occupant that such entry is forbidden, or remains upon the land or in a building, other than a residence, of another after receiving notice from the owner or occupant to depart, commits a Class C misdemeanor.

(b) A person has received notice from the owner or occupant within the meaning of Subsection (a) if he has been notified personally, either orally or in writing, or if a printed or written notice forbidding such entry has been conspicuously posted or exhibited at the main entrance to such land or the forbidden part thereof." Ill. Rev. Stat. 1989, ch. 38, pars. 21—3(a), (b).[1]

■■ This statute criminalizes two distinct forms of conduct. First, it forbids entry on to the property of another, knowing that such entry is forbidden. Second, it forbids remaining on the property after having been told to leave, without regard to the lawfulness of the initial entry. (*People v. Mortenson* (1989), 178 Ill. App. 3d 871, 533 N.E.2d 1134; *People v. Ulatowski* (1977), 54 Ill. App. 3d 893, 368 N.E.2d 174.) The instant case involves the second variety of trespass. The elements of that category of the proscribed conduct are (1) an individual is on the land of another; (2) she is directed to leave by the owner or occupant; and (3) she does not leave. *Mortenson*, 178 Ill. App. 3d at 874, 533 N.E.2d at 1136.

Defendants first argue that the State failed to prove that NHCSI "owned" or "occupied" the property. Defendants contend that NHCSI lacked a sufficient possessory interest in the sidewalk such that it can exclude people.

"Owner" is statutorily defined as:

"[A] person, other than the offender, who has possession of or any other interest in the property involved, even though

---

[1]Subsequent to defendants' arrests, subsection (b) was amended by the legislature. (Ill. Rev. Stat. 1991, ch. 38, par. 21—3(b).) Those changes are immaterial to the issues at hand.

such interest or possession is unlawful, and without whose consent the offender has no authority to exert control over the property." Ill. Rev. Stat. 1989, ch. 38, par. 15—2.

NHCSI did have a lease giving it rights to the sidewalk. Defendants argue that the lease is invalid because it infringes on the other tenants' rights. In support of this claim, defendants cite several civil cases. *E.g., Madigan Brothers, Inc. v. Melrose Shopping Center Co.* (1984), 123 Ill. App. 3d 851, 463 N.E.2d 824; *Great Atlantic & Pacific Tea Co. v. La Salle National Bank* (1979), 77 Ill. App. 3d 478, 395 N.E.2d 1193.

■ The validity of this lease need not be determined here. The arguments which defendants make against the lease concern the possible infringement on other tenants' rights. Under the statute, even if NHCSI's interest were "unlawful," NHCSI would still be an "owner" for purposes of criminal trespass. Thus, at least for purposes of this action, NHCSI has a leasehold interest in this property which carries with it traditional property rights, including the power to exclude people. Accordingly, the State did prove ownership.

Defendants' second contention is that the proof at trial improperly deviated from the allegations in the complaint. The complaint charged defendants with remaining "upon the land of National Health Care located at 7501 N. University, Peoria, Illinois." Defendants argue that this is improper given that the actual name is "National Health Care Services of Peoria, Inc.," and that there is no way for them to determine who the actual complainant was. They also argue that "the land of" does not adequately allege ownership or occupancy.

■ Defendants did not attack the complaint at trial. When a challenge is made for the first time on appeal, the complaint should be held sufficient if it apprised the accused of the precise offense charged with sufficient specificity to prepare her defense and to protect the defendant against double jeopardy. *People v. Pujoue* (1975), 61 Ill. 2d 335, 335 N.E.2d 437; *Mortenson*, 178 Ill. App. 3d at 873, 533 N.E.2d at 1135; *People v. Cassman* (1975), 32 Ill. App. 3d 456, 336 N.E.2d 85.

That test is met here. The full name of the entity was posted on the pillars next to where defendants were arrested. The record reveals that defendants knew what business was involved. (*Cf. Cassman*, 32 Ill. App. 3d at 458, 336 N.E.2d at 87.) Defendants' arguments are speculative at best. The defendants have not shown that they were in any way prejudiced by this immaterial variance.

Moreover, the phrase "the land of" adequately alleges an interest in the land which is sufficient to inform the defendants of the offense charged. *Cf. People v. Thompson* (1978), 56 Ill. App. 3d 557, 372 N.E.2d 117 (holding that complaint which alleged defendants remained "upon the land of" was sufficiently specific to inform defendants who were alleged owners of property).

Defendants next argue that the jury instructions failed to completely instruct the jury as to the required mental state. The trial court gave, *inter alia*, Illinois Pattern Jury Instructions, Criminal, Nos. 16.05 and 16.07 (2d ed. 1981) (IPI Criminal 2d), which state:

> "A person commits the offense of criminal trespass to land when he knowingly remains upon the land of another after receiving notice from the owner to depart." IPI Criminal 2d No. 16.05.

> "To sustain the charge of criminal trespass to land, the State must prove the following proposition:

> That after receiving notice from the owner to depart the defendant knowingly remained upon the land of another.

> If you find from your consideration of all the evidence that this proposition has been proved beyond a reasonable doubt, you should find the defendant guilty.

> If you find from your consideration of all the evidence that this proposition has not been proved beyond a reasonable doubt, then you should find the defendant not guilty." IPI Criminal 2d No. 16.07.

The court modified these instructions slightly by substituting "owner's authorized agent" in place of "owner." At the request of the defendants, the court also gave the following instruction which defined the element of knowledge:

> "A person acts knowingly with regard to the nature or attendant circumstances of his conduct when he is consciously aware that his conduct is of such nature or that such circumstances exist. Knowledge of a material fact includes awareness of the substantial probability that such fact exists." IPI Criminal 2d No. 5.01B (Supp. 1989).

These jury instructions accurately reflect the elements of the offense of criminal trespass and adequately informed the jury what it must find in order to find the defendants guilty. The trial court did not abuse its discretion in refusing defendants' additional non-IPI instructions on mental state.

Defendants also argue that they were not given reasonable notice to vacate and that the trial court erred by refusing their pro-

posed instruction on that issue. The trial court found that defendants had received reasonable notice to leave. The court also noted that reasonable time to leave was not required where the offender exhibits a noncooperative attitude which justifies prompt action.

VanDuyn ordered them to leave and they did not. Sometime later the police officer arrived and twice ordered them to leave. Defendants responded by resuming praying. Defendants were given ample time to vacate after having been ordered to leave but they showed no signs of complying. Moreover, IPI Criminal 2d Nos. 16.05 and 16.07 both contain the requirement that defendants must have been given notice to vacate. The jury was fully informed of the notice requirement and refusal of the non-IPI instruction was not an abuse of discretion.

Additionally, defendants requested an instruction saying that they were justified in staying if their religion was the reason they were asked to leave. The proposed instruction raised issues which were not supported by the evidence nor was it simple, brief, impartial, and free from argument, as a non-IPI instruction is required to be. (134 Ill. 2d R. 451(a).) It was properly denied.

Next, defendants argue that the arrests violated their Federal and State constitutional rights. Specifically, they contend that it violated their right to free speech and cite *People v. Diguida* (1991), 215 Ill. App. 3d 913, 576 N.E.2d 126, in support of their proposition.

In *Diguida*, the court correctly noted that the first amendment provides no protection or redress from the abridgment of free expression by a private corporation or person except under the circumstances enumerated in *Marsh v. Alabama* (1946), 326 U.S. 501, 90 L. Ed. 265, 66 S. Ct. 276. Moving then to the State constitutional claims, the *Diguida* court held that the Illinois Constitution provides broader protections than does the first amendment. The court went on to hold that, under the unique facts of that case, the defendant's actions were protected.

Thus, in the instant case, we find that the defendants' arrests did not violate their Federal constitutional rights. We also find that the unique factual situation present in *Diguida* is not present here. There, the defendant was collecting signatures on a petition outside a grocery store. The store manager testified that they had a policy prohibiting all soliciting on their property. Nevertheless, he also testified that the store did allow solicitation with permission. Based on that, the court found that the defendant had been improperly dis-

criminated against and that his trespass conviction violated his free speech rights as guaranteed by the Illinois Constitution.

Here, however, there is no such evidence of discrimination. Van-Duyn testified that it was her policy to remove all such demonstrators, regardless of their beliefs. There was no evidence that this policy of excluding people was ever applied in a discriminatory manner. NHCSI has not in any way opened up its property as a public forum. Therefore, we find that defendants' actions were not protected by the Illinois Constitution.

Defendants' final contention on appeal is that the State failed to prove beyond a reasonable doubt that defendants knew they were on the land of NHCSI. Defendants argue that they believed this to be public property where they had a right to be. They also argue that they were the implied invitees of the collective tenants of the shopping center and that, as such, could not be ordered to leave by any one tenant.

A conviction will not be overturned on appeal unless, when viewing all the evidence in the light most favorable to the prosecution, no reasonable trier of fact could have found that all the essential elements of the offense were proven beyond a reasonable doubt. *People v. Collins* (1985), 106 Ill. 2d 237, 478 N.E.2d 267.

Initially, we note that this is not public property, *i.e.*, governmentally owned property. If it were, then this case would raise first amendment implications. Here, however, it is undisputed that this is privately owned property, albeit opened to the public. Defendants' arguments tend to blur the line between the two, but there is a major difference in terms of criminal trespass. Property does not lose its private character merely because the public is generally invited to use it for designated purposes. Nor does the property owner lose all right to evict unwanted persons. 75 Am. Jur. 2d *Trespass* §190 (1991).

Defendants cite *Bowman v. State* (1989), 258 Ga. 829, 376 S.E.2d 187, for the proposition that a good-faith mistake as to ownership of the property acts as a defense to a charge of criminal trespass. In *Bowman*, the defendants were protesting near an abortion clinic. There was a five-foot strip of land which was located between the street and the building. The defendants sought the advice of a surveyor who incorrectly informed them that it was public property and that they had the right to remain there. The Georgia Supreme Court held that, under those facts, the State had not proven that the defendants were aware of their conduct (remaining after being told to depart) and aware of the attendant circum-

stances (that they are on another's property). The court noted, however, that "establishing a good faith defense for remaining on the property in the face of a request by the owner to leave, is not as simple as merely claiming that one did not know the property was private, but thought it was public." 258 Ga. at 832, 376 S.E.2d at 189.

This view comports with Illinois law. In *People v. Ulatowski* (1977), 54 Ill. App. 3d 893, 368 N.E.2d 174, the court held that a defendant must have knowledge of the attendant circumstances before he can be found guilty. (*Cf.* IPI Criminal 2d No. 5.01B (Supp. 1989).) The court held that a defendant must have known that he had notice to depart and remained in spite of this notice.

Here, defendants have no more than their claim that they thought they had a right to be there. By arguing that they were implied invitees of the collective tenants, they tacitly concede that they knew this is private property, *i.e.*, the property of another.

Defendants argue, based on *Ulatowski*, that they were not personally aware that notice to leave had been given because they did not think that VanDuyn or the officer had the authority to do so. They claim that knowledge of the attendant circumstances includes knowledge that the one giving notice to leave is in fact the owner or his authorized agent.

The reasoning in *Ulatowski*, however, is inapplicable to these facts. There the defendant was under the influence of LSD. He did not leave an apartment despite being told to do so, having shoes thrown at him, and then being dragged out by his hair. It was only after the police arrived and arrested him that he first believed he was no longer welcome at the apartment. The appellate court held that it was reversible error to refuse a jury instruction which stated that a person is not criminally responsible if his drugged condition renders him incapable of acting knowingly.

Thus, in *Ulatowski*, the issue was not whether notice was given to vacate, but rather whether such notice was received. Neither of those is truly in question here. Defendants admit that both Van-Duyn and Officer Koenig repeatedly told them to leave. Defendants concede that they knew that they were being asked to leave and that they were not welcome there. Their only contention is that they subjectively did not think that anyone had the power to remove them from this sidewalk.

■ We reject defendants' argument that the statute requires that they personally believe that the person notifying them to leave is the owner of the property. A similar issue was addressed in *Peo-*

*ple v. Thompson* (1978), 56 Ill. App. 3d 557, 372 N.E.2d 117. There, the defendants were asked by a school district security officer to leave a school board meeting and refused. The security officer was acting on the school superintendent's instructions. The defendants argued that there was insufficient evidence to prove that the "owner" of the building gave them notice to depart. It was their contention that the superintendent was not authorized by the school district to order their removal. This court rejected that contention and held that the superintendent, as agent of the school district, did have that authority. See also *People v. Spencer* (1971), 131 Ill. App. 2d 551, 268 N.E.2d 192 (high school principal had authority under criminal trespass statute to give defendant the required notice to depart).

Similarly, in *People v. Gudgel* (1989), 183 Ill. App. 3d 881, 540 N.E.2d 391, the appellate court upheld the defendant's conviction for criminal trespass for refusing to leave a tavern's property when told to. In so doing, the court found that a bartender's general exhortations of "I think it's about time everybody went home" was insufficiently vague to act as notice to the patrons to leave. However, the court found that the defendant had received adequate notice when the police arrived and specifically told him to leave or face arrest for criminal trespass.

Here, we not only have a police officer giving an admonition similar to that given in *Gudgel*, we have the tenant of the property explicitly telling defendants to leave. Given this, we find that defendants received adequate notice to vacate as required by the statute.

The basic purpose of the criminal trespass statute is to prevent violence or threats of violence, the legislature having determined that when a person refuses to leave another's property after he has been ordered to do so, a threat of violence becomes imminent. (*People v. Goduto* (1961), 21 Ill. 2d 605, 174 N.E.2d 385.) Further, the statute recognizes a landowner's right to protect his property interests. *People v. Wyant* (1988), 171 Ill. App. 3d 306, 525 N.E.2d 591.

██ This is not a case where defendants entered property, knowing that such entry was forbidden. This is a case where they illegally remained after having been told to leave. The fact that defendants may have been implied invitees of the collective tenants when they entered the land does not give them an irrevocable right to remain. Such consent can be revoked and, contrary to defendants' assertion, more than one party can have the right to revoke that consent. (75 Am. Jur. 2d *Trespass* §180 (1991).) Under defend-

ants' theory, as long as one tenant consented to their presence, neither the landlord nor the rest of the tenants, collectively or individually, could order them to leave.

Defendants presented testimony at trial of another tenant who stated that he did not object to their presence. However, that witness had never met defendants prior to their arrest. An after-the-fact implied invitation cannot prevail against contemporaneous actual notice to leave. In the face of actual notice, the public nature of the premises makes no difference unless the defendants' constitutional rights are in some way impaired. (75 Am. Jur. 2d *Trespass* §190 (1991).) To hold otherwise would eviscerate the policy of avoiding violence, which is embodied in the criminal trespass statute. While this case may not have presented a great likelihood of a violent confrontation, there are many conceivable situations which could give rise to such a likelihood. To forestall such problems, the law provides that upon notification by the owner, the party must leave or face prosecution. The defendants are not free to ignore numerous warnings to leave and to ignore all the procedures of the statute involved. *Thompson,* 56 Ill. App. 3d at 565, 372 N.E.2d at 122.

We find that the element of knowledge was adequately proven here. The State proved that defendants' knew that NHCSI was a tenant of the building and that Margaret VanDuyn was the director of NHCSI. VanDuyn came out of the building and told the defendants that this was private property. When they refused to leave, VanDuyn called the police. Officer Koenig then informed the defendants that they would have to leave. The fact that defendants did not disrupt or interfere with NHCSI's business is of no consequence since the criminal trespass statute simply does not require any disruption or interference. Remaining upon the land of another after being told to leave is sufficient to complete the offense. *Thompson,* 56 Ill. App. 3d at 562, 372 N.E.2d at 120; Ill. Rev. Stat. 1989, ch. 38, par. 21—3(a).

The jury found that the State had proven all the elements of criminal trespass: (1) defendants were on the land of another; (2) they were directed to leave by the owner or occupant; and (3) they did not leave. Accordingly, we affirm the conviction of both defendants.

Affirmed.

SLATER and HAASE, JJ., concur.