THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JAMES SINGLETARY, Defendant-Appellant.

Third District    No. 3—92—0074

Opinion filed November 18, 1992.

John F. Klunk, of Lockport, for appellant.

Edward Burmila, Jr., State's Attorney, of Joliet, and Howard R. Wertz, of Lynwood (John X. Breslin, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE HAASE delivered the opinion of the court:

A jury convicted the defendant, James Singletary, of two counts of unlawful delivery of a controlled substance (Ill. Rev. Stat. 1987, ch. 56½, pars. 1401(a)(2), (b)(2)). The trial court subsequently sentenced him to concurrent terms of six years on one count and four years on the other count. The defendant appeals.

The record shows that Alina Alvarez testified at the defendant's trial that she knew the defendant through his girlfriend, Marsha Moore, who worked with Alvarez. Alvarez both bought cocaine from the defendant and used cocaine with him in December of 1988. On January 19, 1989, Alvarez was arrested for writing a bad check. In order to avoid being put in jail and to receive a positive recommendation from the Bolingbrook police, Alvarez agreed to become an informant. As an informant, she made arrangements for the defendant to meet Officer Bob Glynn, a special agent in the Drug Enforcement Administration, for the purchase of cocaine. Officer Glynn then came to the defendant's residence and purchased one gram of cocaine from him for $100. Prior to leaving, Glynn asked to buy more cocaine at a

later time. The defendant agreed and stated that Alvarez could give Officer Glynn his telephone number.

Officer Glynn also testified at the defendant's trial. On January 31, 1991, he purchased one gram of cocaine from the defendant for $100. On February 3, Glynn went to the defendant's residence and purchased one-sixteenth of an ounce for $130.

On February 10, Officer Glynn drove the defendant to meet a supplier of cocaine behind an Osco's drug store. The defendant told Officer Glynn he was not sure who would deliver the cocaine, but the "runner" would be one of five people the defendant knew. After receiving the cocaine, Officer Glynn and the defendant returned to the defendant's residence. The defendant divided the cocaine and sold one-quarter of an ounce to Glynn for $400. The defendant told Glynn the remaining cocaine was for someone else.

On February 16, Officer Glynn made arrangements to purchase one ounce of cocaine from the defendant. Glynn waited at the defendant's residence while the defendant met his supplier to get the cocaine. When the defendant returned, Glynn purchased an ounce for $1,000. Once again, the defendant said the remaining cocaine was for someone else.

Officer Glynn also tried to set up another purchase with the defendant by calling him on March 6, 10, and 14. Each time, the defendant stated that his supplier was unavailable. Finally, on March 21, after finding the defendant's telephone was disconnected, Officer Glynn, along with other officers, went to the defendant's residence and arrested him.

The defendant also testified. He claimed that Alvarez provided the opportunities and encouraged his participation in selling cocaine. Specifically, she provided him with a straw and a mirror to use cocaine, a scale to weigh it, and a grinder to change it from rock into powdered form. Further, she gave him a telephone number to a cocaine supplier's beeper and a verbal code that enabled him to make purchases. The defendant also stated that he and Alvarez used the cocaine that was left over after the sales to Officer Glynn.

The defendant further testified that he was in financial trouble. He had lost his job as superintendent at the Stateville Correctional Center. He had trouble paying bills, and because Alvarez helped him with the bills, he felt obligated to deal cocaine. He also testified that he had a cocaine and drinking problem during the time he was selling cocaine to Officer Glynn. The defendant claimed he did not have a cocaine problem prior to meeting Alvarez, although he did admit to previous use.

On appeal, the defendant argues that he was not properly convicted. He contends that he was entrapped into delivering cocaine as a matter of law.

■ Entrapment occurs when State officers implant in the mind of an innocent person the disposition to commit an offense and induce the commission of the offense in order to prosecute. (Ill. Rev. Stat. 1991, ch. 38, par. 7—12.) Thus, in order for the defense of entrapment to be available to a defendant, the idea to commit the crime must not originate with the defendant. Instead, government agents must actively encourage the defendant to act, the purpose of the encouragement must be to obtain evidence to prosecute the defendant, and the defendant must not be independently predisposed to commit the crime prior to first being approached by government agents. *People v. Kulwin* (1992), 229 Ill. App. 3d 36, 593 N.E.2d 717.

■ A number of factors are to be considered when determining a defendant's predisposition to commit a crime: the defendant's initial reluctance or readiness to commit the offense, his familiarity with drugs, his willingness to make a profit from the illegal conduct, his access to a ready source to supply the drugs, and his own prior or current use of illegal drugs. *People v. Lambrecht* (1992), 231 Ill. App. 3d 426, 595 N.E.2d 1358; *People v. Poulos* (1990), 196 Ill. App. 3d 653, 554 N.E.2d 448.

■ The question of whether a defendant has been unlawfully entrapped is generally a factual question to be resolved by the trier of fact. (*People v. Tipton* (1980), 78 Ill. 2d 477, 401 N.E.2d 528.) A reviewing court may not substitute its judgment for that of a jury with regard to the weight of the evidence or the credibility of the witnesses and should not reverse a conviction unless the evidence is so improbable, unreasonable, or unsatisfactory as to justify a reasonable doubt of the defendant's guilt. (*People v. Lambrecht* (1992), 231 Ill. App. 3d 426, 595 N.E.2d 1358, citing *People v. Campbell* (1992), 146 Ill. 2d 363, 586 N.E.2d 1261.) Thus, the relevant inquiry is whether, upon reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the elements essential to the criminal conviction beyond a reasonable doubt. *People v. Lambrecht* (1992), 231 Ill. App. 3d 426, 595 N.E.2d 1358, citing *People v. Collins* (1985), 106 Ill. 2d 237, 478 N.E.2d 267.

■ When the evidence is viewed under this standard, reversal is not warranted. The record shows that the defendant was knowledgeable in the sale of narcotics. The defendant set up meeting places to purchase cocaine, weighed and divided it, and had paraphernalia to use it. He admitted to being a user and was knowledgeable in drug

slang. He also had cocaine left over after the sale which he said was for someone else. There was also evidence that he used and sold cocaine prior to being introduced to Officer Glynn. Finally, the defendant admitted to making some profit on the sales and that he was in need of money.

The defendant, however, contends that he was not predisposed to the sale of cocaine. He raises three points in support of his claim.

First, the defendant argues that he had no prior criminal record. Yet, lack of a prior criminal record is not controlling. (*People v. Dennis* (1981), 94 Ill. App. 3d 448, 418 N.E.2d 479.) Further, the lack of such a criminal record cannot overcome other evidence of a defendant's willingness to make unlawful sales when the opportunity presented itself. *People v. Darnell* (1990), 214 Ill. App. 3d 345, 573 N.E.2d 1252.

Second, the defendant argues that he was not previously known to the police. However, the fact that the government agents did not have either prior contact with or knowledge of the defendant is not determinative. *People v. Dennis* (1981), 94 Ill. App. 3d 448, 418 N.E.2d 479, citing *People v. Wells* (1962), 25 Ill. 2d 146, 182 N.E.2d 689.

Third, the defendant argues that the informant, rather than the defendant, "set up the first transaction." Yet, entrapment does not exist merely because a government agent initiates a relationship with a defendant that leads to a transaction in a controlled substance. (*People v. Dennis* (1981), 94 Ill. App. 3d 448, 418 N.E.2d 479.) The fact that the government agent made the initial contact is not controlling; rather, it is but one factor to be considered by the jury. Furthermore, a propensity to commit the offense can be shown by a ready response to the alleged inducement. (*People v. Dennis* (1981), 94 Ill. App. 3d 448, 418 N.E.2d 479.) Here, after the initial contact, the defendant readily supplied cocaine to the government agent, showing a clear propensity to act as a cocaine dealer. We also note that the defendant was not charged with the initial two sales of cocaine, but only with the latter two.

Thus, in viewing the evidence in the light most favorable to the prosecution, we affirm the judgment of the circuit court of Will County.

Affirmed.

McCUSKEY and STOUDER, JJ., concur.