THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ROGER L. EASLEY *et al.*, Defendants-Appellants.

Third District Nos. 3—96—0364, 3—96—0365 cons.

Opinion filed May 30, 1997.

488

HOLDRIDGE, J., dissenting.

Roger L. Easley, of Breckenridge, Colorado, and Brian J. Terrill, of Denver, Colorado, appellants *pro se.*

Ted J. Hamer, State's Attorney, of Cambridge (John X. Breslin and Rita Kennedy Mertel, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE McCUSKEY delivered the opinion of the court:

The defendants, Roger L. Easley and Brian J. Terrill, were convicted of unlawful possession of drug paraphernalia (720 ILCS 600/3.5(a) (West 1994)) and unlawful possession of cannabis (720 ILCS 550/4(c) (West 1994)). Easley was fined $1,250, and Terrill's fine was $1,750. On appeal, the defendants challenge the stop and search of their vehicle, the conduct of the trial and the sufficiency of the evidence. After carefully reviewing the record, we affirm.

## FACTS

On May 12, 1995, Officer Shane Oleson of the Geneseo police department (the officer) saw a white 1985 Toyota vehicle with no rear registration light make an unsignaled right turn. The car pulled into a parking lot, and the officer stopped his squad car behind it. When the officer approached the car, he found the defendants inside. The officer then asked the driver, Terrill, for his driver's license. When Terrill opened his wallet, the officer saw a business card decorated with a picture of a marijuana leaf inside the wallet. Terrill immediately tried to hide the card from the officer's view. The officer observed that Terrill appeared nervous and was perspiring, and the vehicle's ashtray was open.

The officer returned to his squad car to run Terrill's license through the computer. Because the officer saw the picture of the marijuana leaf, he ran a check of Terrill's criminal history. During this time, the defendants remained in the car. The officer's investigation revealed that Terrill's license was valid and he had a prior conviction for a drug offense. When the officer returned to the

defendants' car, he noted that the ashtray was closed. The officer gave Terrill a verbal warning concerning the rear registration light and the need to signal his turns.

At this time, a conversation took place during which the defendants asked how much farther they would have to drive to reach Chicago. When the officer asked why they were going to Chicago, the defendants said they were going to a festival to advocate the legalization of hemp. The officer told the defendants that he was concerned, based upon seeing the marijuana leaf picture and Terrill's previous criminal history, that there might be illegal drugs in the vehicle. The defendants denied carrying any illegal substances. As a result of their response, the officer asked if he could search the car. The defendants refused to give permission for the officer to search the vehicle.

The officer informed the defendants that they were free to go. However, he told them that he would detain the vehicle to give a canine unit the chance to walk around the car to determine if drugs were present. Approximately two minutes elapsed before the canine unit arrived. The dog proceeded to alert when he reached the trunk area of the car. The officer then searched the trunk of the vehicle and found a large box of glass pipes ordinarily used to smoke marijuana, another box of glass pipes with brass screens also used to smoke marijuana, several products made from hemp, including cookie dough mix, pancake mix, lip balm and sunblock, and various items promoting the legalization of hemp, including bumper stickers.

Based upon the possession of these items, the officer arrested the defendants on a charge of unlawful possession of drug paraphernalia. Following the arrest, the officer searched the interior of the defendants' car and found $12^{1}/_{2}$ grams of marijuana located inside a camcorder case on the front seat. Consequently, the defendants were charged with unlawful possession of cannabis.

Prior to trial, the State waived the prospect of any incarceration for the defendants if they were found guilty of the various offenses. Based upon this waiver, the trial court denied the defendants' request for appointment of the public defender. The defendants filed numerous motions attacking the jurisdiction of the court and the propriety of the officer's stop and search of the vehicle. All of the defendants' motions were denied.

At trial, Officer Oleson testified about his observations of the defendants on May 12, 1995, as well as their arrest and his search of the vehicle. Two other officers of the Geneseo police department testified on behalf of the State. Their testimony corroborated Officer Oleson's testimony.

Following the presentation of the evidence, the defendants

tendered to the court several nonpattern jury instructions. The judge refused to give the jury these instructions.

After deliberating, the jury found the defendants guilty as charged. This timely appeal followed.

## ISSUES AND ANALYSIS

### I. Stop and Search

■ The defendants first challenge the propriety of the stop and search of their vehicle. Where, as here, there is no real question regarding the facts, we conduct a *de novo* review of the trial court's determination of reasonable suspicion to stop a vehicle and probable cause to conduct a search. *Ornelas v. United States*, 517 U.S. 690, 699-700, 134 L. Ed. 2d 911, 920-21, 116 S. Ct. 1657, 1663 (1996); see also *People v. Kidd*, 175 Ill. 2d 1, 25-26, 675 N.E.2d 910, 922 (1996). Following our *de novo* review, we conclude that the trial court correctly found that the stop and search were proper.

■ Generally, a traffic violation provides a sufficient basis for a traffic stop. *People v. Hood*, 265 Ill. App. 3d 232, 241, 638 N.E.2d 264, 271 (1994). Accordingly, a police officer may properly stop a motor vehicle when the driver turns without signaling. *People v. Shepherd*, 242 Ill. App. 3d 24, 29, 610 N.E.2d 163, 166 (1993). Officer Oleson's testimony that Terrill failed to signal his turn was not contradicted at trial. Thus, the defendants were properly stopped for turning without signaling.

When a police officer stops a vehicle for a minor traffic violation, the officer may briefly detain the driver to request a valid driver's license. *People v. Koutsakis*, 272 Ill. App. 3d 159, 163, 649 N.E.2d 605, 608 (1995). Also, in some situations, the police officer may conduct a speedy warrant check. *Koutsakis*, 272 Ill. App. 3d at 163, 649 N.E.2d at 608. If no further suspicion is aroused in the officer following these initial inquiries, the traffic stop may go no further and the individuals involved should no longer be detained. *Koutsakis*, 272 Ill. App. 3d at 163, 649 N.E.2d at 608; see also *People v. Sinclair*, 281 Ill. App. 3d 131, 138, 666 N.E.2d 1221, 1226 (1996).

However, where the officer's suspicion is aroused during these initial inquiries, further detention may be warranted. *United States v. Finke*, 85 F.3d 1275, 1280 (7th Cir. 1996); *People v. Smith*, 208 Ill. App. 3d 44, 50, 566 N.E.2d 939, 943 (1991). In deciding whether reasonable suspicion exists to justify the detention, we must consider the totality of the circumstances or the "whole picture" in each case. *People v. Anaya*, 279 Ill. App. 3d 940, 945-46, 665 N.E.2d 525, 529 (1996), quoting *United States v. Sokolow*, 490 U.S. 1, 8, 104 L. Ed. 2d 1, 10, 109 S. Ct. 1581, 1585 (1989). Even where there may be an innocent explanation for each individual factor considered separately,

the factors viewed in combination may constitute enough reasonable suspicion to warrant further detention. *Finke*, 85 F.3d at 1280.

■ Here, in this case, Officer Oleson asked Terrill for his driver's license and observed a card decorated with a marijuana leaf in Terrill's wallet. Also, Terrill appeared nervous and was perspiring. Based upon these facts, Officer Oleson was justified in running a check of Terrill's criminal history. See *Finke*, 85 F.3d at 1280 (because of suspicious behavior and circumstances, officers justified in performing criminal history check).

Officer Oleson then discovered that Terrill had a prior conviction of a drug offense. When the officer returned to the vehicle he observed that the ashtray, which had been open, was now closed. Further, the defendants told the officer that they were traveling to a festival to advocate the legalization of hemp. Based upon all of these facts, considered in combination, we conclude that the officer was justified in detaining the defendants for an additional two minutes until the canine unit arrived. See *Finke*, 85 F.3d at 1282 (considering the suspicious circumstances and the fact that the passenger had two previous drug convictions, officers had sufficient reasonable suspicion to hold the defendants four minutes until the dog arrived). We additionally note there is nothing in the record to show that the defendants objected to this short, two-minute detention or that the officer used any kind of coercion to compel the defendants to stay.

After the dog alerted, Officer Oleson had probable cause to search the vehicle. See *Finke*, 85 F.3d at 1282 (when dog alerted, reasonable suspicion blossomed into probable cause to search); *United States v. Bloomfield*, 40 F.3d 910, 919 (8th Cir. 1994) (dog's identification provides probable cause that drugs are present); *Koutsakis*, 272 Ill. App. 3d at 163, 649 N.E.2d at 608 (an alert by a trained dog may constitute probable cause for a search). Moreover, finding items of drug paraphernalia provides the police with sufficient probable cause to search the vehicle for concealed drugs. *People v. Schrems*, 224 Ill. App. 3d 988, 998, 586 N.E.2d 1337, 1345 (1992). As a consequence, after the police found drug paraphernalia in the vehicle's trunk, they had probable cause to search the remainder of the vehicle.

Based upon the undisputed facts in this case, we conclude that the stop and detention of the vehicle were justified. Also, we find the search was proper because it was based upon probable cause.

## II. Trial Proceedings

### A. Jurisdiction
■ The defendants claim the circuit court of Illinois lacks juris-

diction in this case because it is not a court authorized by article III of the United States Constitution. U.S. Const., art. III. Also, they note that only article III courts have jurisdiction over controversies between a state and a sovereign. The defendants contend they are sovereigns, and because the State of Illinois is the opposing party, this case must be adjudicated by an article III court.

The defendants cite no authority for their contention that an ordinary citizen is a "sovereign." Furthermore, our research reveals no such authority. Consequently, we conclude that the defendants are not sovereigns and are not entitled to have their case heard by an article III court.

### B. Grand Jury Indictment

■ The defendants claim they were entitled to be indicted by a grand jury. However, it is well-settled law that the fifth amendment constitutional requirement of a grand jury indictment is not applicable to state criminal proceedings. *People v. Redmond*, 67 Ill. 2d 242, 246, 367 N.E.2d 703, 705 (1977). Accordingly, the defendants had no right to be indicted by a grand jury.

### C. Right to Counsel

■ The defendants argue that they were entitled to the appointment of a public defender to represent them in this case. However, the sixth amendment right to counsel applies *only* in those cases where the defendant is actually sentenced to imprisonment. *Scott v. Illinois*, 440 U.S. 367, 373-74, 59 L. Ed. 2d 383, 389, 99 S. Ct. 1158, 1162 (1979). Because the prosecutor waived any jail sentence for the defendants, they were not entitled to the appointment of counsel at the State's expense.

### D. Continuance

■ Next, the defendants maintain they were prejudiced in preparing for trial because the trial court denied their request for a continuance. Again, from our review of the record, we disagree.

The granting of a continuance rests within the sound discretion of the trial court, and that court's determination will not be reversed unless there has been an abuse of discretion. *People v. Cobb*, 97 Ill. 2d 465, 477, 455 N.E.2d 31, 36 (1983). Before it can be held that a motion for continuance based upon a lack of preparedness was improperly denied, it must appear from the record that the refusal prejudiced the defendant. *People v. Wilson*, 29 Ill. 2d 82, 92, 193 N.E.2d 449, 454 (1963).

It is abundantly clear from the record that the defendants sought

a continuance only to gain time so they could file additional motions to relitigate the very issues the trial court had previously ruled upon. It is also clear from our review of the record that the defendants were not conducting any investigation that would exculpate them at trial. Indeed, their defense was solely based on their personal opinion that the possession of cannabis should not be illegal. For these reasons, we find the trial court did not abuse its discretion in denying the defendants' request for a continuance.

### E. Jury Instructions

The defendants' final contention is that the trial court erred in refusing to give various instructions they tendered at trial.

A trial judge's decision to reject nonpattern jury instructions is not an abuse of discretion when the instructions the court has given the jury adequately cover the issues in the case. *People v. Garcia*, 165 Ill. 2d 409, 432, 651 N.E.2d 100, 111 (1995). The law is well settled that argumentative instructions should not be given by the trial court. See *People v. Yutt*, 231 Ill. App. 3d 718, 724, 597 N.E.2d 208, 212 (1992). From our review, we find the defendants' instructions to be argumentative. Moreover, the pattern instructions given by the court adequately informed the jury of the rules of law governing their deliberations. Accordingly, we find no error in the trial court's refusal to give the defendant's nonpattern jury instructions.

### III. Reasonable Doubt

The next issue raised by the defendants is whether they were proved guilty beyond a reasonable doubt. They contend that the State failed: (1) to prove the *"corpus delicti"* of the crime; (2) to prove they intended to possess drug paraphernalia or cannabis; and (3) to present any reliable witnesses.

In assessing whether the defendant has been proven guilty beyond a reasonable doubt, the relevant question is whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *People v. Collins*, 106 Ill. 2d 237, 261, 478 N.E.2d 267, 276 (1985). A reviewing court will not reverse a conviction unless the evidence is so improbable, unreasonable or unsatisfactory as to raise a reasonable doubt concerning the defendant's guilt. *People v. Singletary*, 237 Ill. App. 3d 503, 506, 604 N.E.2d 1009, 1012 (1992).

A person commits unlawful possession of drug paraphernalia when he knowingly possesses an item of drug paraphernalia with the intent to use it in ingesting, inhaling or otherwise introducing can-

nabis into the human body. 720 ILCS 600/3.5(a) (West 1994). In determining whether the defendant intended to use the paraphernalia, the trier of fact may consider whether the cannabis was found in the proximity of the paraphernalia. 720 ILCS 600/3.5(b) (West 1994). A person commits unlawful possession of cannabis when he knowingly possesses any substance containing cannabis. 720 ILCS 550/4 (West 1994).

■ From our careful review of the record, we find the evidence was sufficient to prove the defendants guilty beyond a reasonable doubt. The defendants admitted they were traveling to a festival to advocate the legalization of hemp. Also, Terrill carried a picture of a marijuana leaf in his wallet. Moreover, when Officer Oleson went to his squad car to run a check on Terrill's license, the defendants closed the vehicle's ashtray. A search revealed that the trunk of the car was filled with pipes used to smoke marijuana, as well as other products derived from the hemp plant. Based on these facts, the jury could reasonably have concluded that the defendants knew they possessed drug paraphernalia and intended to use the paraphernalia to ingest cannabis. Also, from this evidence, the jury could have easily concluded that the defendants knew they possessed cannabis.

■ ■ Contrary to the defendants' assertion, the State did prove the "*corpus delicti,*" *i.e.*, that a crime had been committed. See Black's Law Dictionary 344 (6th ed. 1990). Possession of drug paraphernalia and cannabis is against the laws of the State of Illinois. The prosecutor in this case proved that the defendants possessed these items. Additionally, he proved the proper mental state for the offense by proving the defendants knew they possessed the cannabis and the paraphernalia. See 720 ILCS 5/4—4, 4—5; 550/4; 600/3.5(a) (West 1994).

■ Finally, it is well-settled law that a court of review may not substitute its judgment for that of the trier of fact concerning the weight, credibility or conflicting nature of the evidence. See *People v. Sanchez*, 115 Ill. 2d 238, 260-61, 503 N.E.2d 277, 284 (1986). It is clear from the record that the jury found the testimony of the police officers was reliable and worthy of belief. A court of review should not disagree with the trier of fact's determination on issues of credibility.

After reviewing the record, we find the defendants were proven guilty beyond a reasonable doubt.

## IV. Other Issues

· The defendants have raised numerous other issues regarding the conduct of their trial. However, from our review, we find that the defendants have waived these claims on appeal because they failed to

support them with coherent legal arguments. See *Spinelli v. Immanuel Lutheran Evangelical Congregation, Inc.*, 118 Ill. 2d 389, 401, 515 N.E.2d 1222, 1227 (1987).

For the reasons stated, we affirm the judgment of the circuit court of Henry County.

Affirmed.

SLATER, J., concurs.

JUSTICE HOLDRIDGE, dissenting:

I respectfully dissent. I would find that Officer Oleson did not have probable cause to search defendants' vehicle subsequent to the traffic stop and I would reverse the conviction on that basis.

I agree that under *Ornelas v. United States*, 517 U.S. 690, 134 L. Ed. 2d 911, 116 S. Ct. 1657 (1996), a *de novo* standard of review should be applied to issues involving reasonable suspicion to stop a vehicle and probable cause to conduct a search. See *People v. Kidd*, 175 Ill. 2d 1 (1996). However, even under a manifest weight of the evidence standard of review, I would hold that probable cause to search the vehicle was lacking.

Warrantless searches are presumptively unreasonable unless certain limited exceptions apply. *People v. Rinaldo*, 80 Ill. App. 3d 433, 434 (1980). Prior to the search of a car, the police must obtain a search warrant unless the circumstances fall within an exception to the warrant requirement such as probable cause. *United States v. Ross*, 456 U.S. 798, 809, 72 L. Ed. 2d 572, 583-84, 102 S. Ct. 2157, 2164-65 (1982).

To establish probable cause to search an automobile, it must be shown that the totality of the facts and circumstances known to the officer at the time of the search would justify a reasonable person in believing that contraband was present in the automobile. *People v. Smith*, 95 Ill. 2d 412, 419 (1983). "Stopping a vehicle for a minor traffic violation does not, by itself, justify a search of the detainee's person or vehicle. The officer must reasonably believe that he is confronting a situation more serious than a routine traffic violation." *People v. Penny*, 188 Ill. App. 3d 499, 502 (1989).

In this matter, I believe that a review of the record shows that Officer Oleson lacked probable cause to detain the vehicle after issuing the verbal warning, checking the driver's license and running the warrant check. The facts that one defendant had a business card with a marijuana leaf embossed on it and that the defendants told the officer that they were in route to a festival advocating the legal-

ization of hemp are both lawful activities protected by the first amendment to the United States Constitution. I do not believe that these lawful activities can constitute probable cause.

These facts, combined with the officer's observation of the ashtray being open the first time he saw it and closed the next, amount to mere suspicion. "Mere suspicion [citation] or curiosity is not enough to justify a search. [Citation.] *** [A]n officer's authority to investigate a traffic violation may not serve as a subterfuge to obtain other evidence based on suspicion." *Penny*, 188 Ill. App. 3d at 502.

Likewise, the officer's observation of Terrill's nervousness and perspiration cannot support a finding of probable cause. Merely appearing nervous at the approach of a police officer is not sufficiently suspicious conduct to justify probable cause. *People v. Blake*, 268 Ill. App. 3d 737, 741 (1995).

Finally, the fact that the trained dog "alerted" to a possible presence of a controlled substance after the defendants' vehicle was detained cannot support a finding that the officer had probable cause to detain the vehicle for the search. The existence of probable cause to detain and search must be based upon the totality of the circumstances known to the officer at the time of the search. The critical time period in this case is the period of time from the initial stop of the vehicle until the dog's alert. *People v. Koutsakis*, 272 Ill. App. 3d 159, 163 (1995). If there was no basis for a search of the vehicle prior to the dog's alert, the defendants were not lawfully detained at the time of the alert, and the search was unlawful. *Koutsakis*, 272 Ill. App. 3d at 163.

I would hold that Officer Oleson did not have probable cause to search the defendants' vehicle and would reverse the trial court on that basis. Since the People could not prevail on remand without the evidence that I would find should have been suppressed, I would reverse defendants' convictions outright. *People v. Woods*, 241 Ill. App. 3d 285, 290 (1993).