# Illinois Official Reports

## Appellate Court

---

### *People v. Nicolosi*, 2019 IL App (3d) 180642

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. DAVID J. NICOLOSI, Defendant-Appellee. |
| | |
| District & No. | Third District<br>No. 3-18-0642 |
| | |
| Rule 23 order filed<br>Motion to<br>publish allowed<br>Opinion filed | September 6, 2019<br><br>September 27, 2019<br>September 27, 2019 |
| | |
| Decision Under Review | Appeal from the Circuit Court of Will County, No. 17-DT-969; the Hon. Carmen J. Goodman, Judge, presiding. |
| | |
| Judgment | Reversed and remanded. |
| | |
| Counsel on Appeal | James W. Glasgow, State's Attorney, of Joliet (Patrick Delfino, Thomas D. Arado, and Chelsea E. Kasten, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.<br><br>No brief filed for appellee. |

Panel                          JUSTICE O'BRIEN delivered the judgment of the court, with opinion. Presiding Justice Schmidt and Justice Carter concurred in the judgment and opinion.

# OPINION

¶ 1       The State appeals an order granting defendant David J. Nicolosi's motion to quash arrest and suppress evidence. We reverse and remand.

¶ 2                                    I. BACKGROUND

¶ 3       The State charged defendant with driving under the influence of alcohol (DUI) (625 ILCS 5/11-501(a)(2) (West 2016)). Defendant filed a motion to quash arrest and suppress evidence.

¶ 4       At the hearing on defendant's motion, Lockport police officer Kevin Brauch testified. On October 23, 2016, Brauch observed a vehicle driven by defendant in the Mine Grove School parking lot attempting a three-point turn. Brauch explained, "it was more turns than that but kept hitting the curb and having difficulty navigating itself back out the—to exit out the entrance." Although Brauch did not believe any traffic violations occurred, he drove his squad car into the parking lot to check on the welfare of defendant.

¶ 5       When Brauch parked his squad car next to defendant's vehicle, defendant had completed the turnaround. The two vehicles were positioned alongside one another, and defendant rolled down his window. Brauch asked defendant if everything was "okay." Defendant stated that he was trying to get to his friend's house but was having problems with his global positioning system (GPS) navigation. Brauch then noticed that defendant's eyes were glassy and red, his speech was slurred, and defendant was slow or hesitant to answer Brauch's questions. Brauch could also smell the odor of an alcoholic beverage coming from defendant's vehicle. Brauch asked defendant if he had been drinking alcohol, and defendant responded that he had consumed two beers.

¶ 6       Brauch then reversed his squad car and blocked defendant's vehicle from leaving the area. Brauch activated his dash cam video recorder and recorded his interaction with defendant. Brauch then performed field sobriety tests. First, Brauch performed an alphabet test and a finger dexterity test while defendant was still seated in his vehicle. After these tests, Brauch performed a horizontal gaze nystagmus (HGN) test by asking defendant to follow Brauch's pen without moving his head. While performing this test, Brauch noticed that defendant's eyes lacked smooth pursuit. Defendant also could not look at the pen for a short time then look straight ahead.

¶ 7       Next, Brauch asked defendant to exit his vehicle and again asked if defendant had consumed alcoholic beverages. Defendant said that he had consumed a couple of beers. Brauch then conducted another HGN test and noticed defendant moved his head during the test rather than only following the pen with his eyes. Brauch also stated that defendant swayed from side to side. Brauch asked defendant to perform a walk-and-turn test. Brauch demonstrated how to perform the test. During the test, defendant failed to follow some of Brauch's instructions. Defendant had difficulty keeping his heel and toes together as he walked. When defendant was

asked to turn, he did an "about-face rather than the pivot steps" that Brauch had demonstrated. Defendant also had to take an extra step to rebalance himself. On the return walk, defendant missed several heel to toe steps by more than six inches and appeared to walk normally at the end rather than attempting heel to toe steps.

¶ 8    Brauch next asked defendant to perform the one-legged stand test. During the test, defendant had to put his foot down to balance himself, and defendant also had to restart the counting test when he counted out of order despite being instructed to continue counting where defendant had left off. Defendant also stopped the test before Brauch instructed him to do so.

¶ 9    Following the field sobriety tests, Brauch asked defendant to perform a preliminary breath test (PBT), which defendant declined. At that point, Brauch arrested defendant. The video recording of the time Brauch blocked defendant's vehicle and began performing field sobriety tests was played for the court during Brauch's testimony.

¶ 10    Following the evidence, the court found that Brauch was justified in initially approaching defendant to check his welfare after observing defendant struggling to perform a turnaround. The court found defendant's explanation that he was lost and having trouble with his GPS navigation to be reasonable. The court then commented on the video recording of defendant performing the field sobriety tests. The court found defendant's speech "very clear" and defendant's balance to be "excellent." The court also commented that the surface of the area defendant performed the field sobriety tests was "cracked and looked a little uneven." The court also noted that "[Brauch] indicated that the defendant stumbled or was swaying. I don't see that. He did put his leg down. I saw he had perfect balance." The court continued:

> "So I look now because the Fourth Amendment does trigger in this case with unreasonable searches and seizures at the point he blocked his vehicle after the defendant made a turn and he saw everything was okay. *** And we saw no tape of any kind of this curb, this erratic driving, we see none of that, what alludes to erratic driving. Had it been some type of erratic driving, it would seem to me that the officer would have at least, not to mention this is a parking lot, officer had to—which becomes an issue in and of itself, that was not raised but it is a parking lot of a school, it was not raised.
>
> So now we look to determine whether or not he had probable cause and reason to believe that the defendant was under the influence of alcohol. There is a litany of factors we can look at. The smell of alcohol clearly not enough. Red and bloodshot eyes, clearly not enough. Non-standardized tests are given often. That is not unusual. The PBT shows consciousness of guilt. He was cooperative up until that point. I saw that he did very well. It doesn't seem like he was touching heel to toe. I think the officer was credible when it came to that point but it is just not enough here under the law."

¶ 11    Ultimately, the court granted defendant's motion to quash arrest and suppress evidence. The court clarified that all evidence after Brauch blocked defendant's vehicle would be suppressed.

## II. ANALYSIS

On appeal, the State contends that the court erred by granting defendant's motion to quash arrest and suppress evidence.[1] Specifically, the State contends that the court erred in finding that (1) the officer lacked a reasonable articulable suspicion to detain defendant for further questioning and field sobriety tests and (2) the officer lacked probable cause to arrest defendant after performing the field sobriety tests. We discuss each argument in turn.

A circuit court's ruling on a motion to quash arrest usually involves assessing the credibility of witnesses and making a determination of the facts. *People v. Wright*, 183 Ill. 2d 16, 21 (1998). A ruling in these circumstances should not be disturbed unless it was manifestly erroneous. *Id.* However, a ruling should be reviewed *de novo* "[w]hen neither the facts nor the credibility of the witnesses is questioned." *People v. Foskey*, 136 Ill. 2d 66, 76 (1990). We discuss the State's arguments in turn.

### A. Defendant's Detention

At the outset, we note that the court appears to have applied the incorrect standard when considering whether Officer Brauch lacked a reasonable articulable suspicion to detain defendant. The court stated that Brauch lacked probable cause to block defendant's vehicle and administer field sobriety tests. However, in a DUI case, if an officer has a reasonable suspicion based on specific and articulable facts that a driver is under the influence of alcohol, field sobriety tests which "do not involve long delay or unreasonable intrusion, although searches under the fourth amendment, may be justified." *State v. Superior Court*, 718 P.2d 171, 176 (Ariz. 1986); see generally *People v. Easley*, 288 Ill. App. 3d 487, 491 (1997). Therefore, the appropriate standard to apply on this issue is whether Brauch had a reasonable articulable suspicion that defendant was driving under the influence of alcohol.

Applying the above standard, we find that the facts known to Brauch at the time he blocked defendant's vehicle gave rise to a reasonable suspicion that defendant was driving under the influence. Brauch observed defendant driving his vehicle and having difficulty performing a turnaround. Brauch testified that he observed defendant's vehicle collide with the curb several times during the process. When Brauch approached defendant's vehicle, he noticed the odor of an alcoholic beverage emanating from defendant's vehicle. Brauch also testified that he observed defendant's eyes were glassy and red. Defendant also admitted to consuming alcohol. Based on these circumstances, we find that it was proper for Brauch to detain defendant and perform field sobriety tests. Therefore, the court erred when it suppressed the evidence of defendant's field sobriety testing. Our inquiry, however, does not end here.

### B. Defendant's Arrest

Next, the State argues the court erred in finding that Brauch lacked probable cause to arrest defendant following the field sobriety tests. "Probable cause to arrest exists when the facts known to the officer at the time of the arrest are sufficient to lead a reasonably cautious person to believe that the arrestee has committed a crime." *People v. Wear*, 229 Ill. 2d 545, 563-64 (2008). Such a determination must be based upon the totality of the circumstances. *Id.* at 564. Probable cause must rise to a level higher than mere suspicion. *E.g.*, *People v. Boomer*, 325

---

[1]Defendant did not file a responding brief on appeal.

Ill. App. 3d 206, 209 (2001). It must also rise to a level higher than "reasonable, articulable suspicion," the lesser standard required to justify an investigatory stop, rather than a full arrest. *E.g.*, *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000).

¶ 20 Based on the totality of the circumstances, we find that the circuit court erred when it held that Brauch lacked probable cause to arrest defendant. In making its determination, the court correctly noted that defendant smelled of an alcoholic beverage, had red and glassy eyes, and refused to perform a PBT. The court proceeded to consider these factors independently when it determined that Brauch lacked probable cause. While it may be true that any one of these factors taken in isolation may be insufficient to justify defendant's arrest, when viewed cumulatively along with the other observations of the officer, they do support a finding of probable cause. Although, the court found that defendant performed well on the field sobriety tests, the dash cam recording of the tests shows that defendant repeatedly failed to follow Brauch's instructions. First, while performing the alphabet test, defendant had to repeat the test after his failed first attempt. During the second attempt, defendant jumbled several letters. Brauch had defendant perform the finger dexterity test twice. The first attempt defendant asked for instruction on how to perform the test. During the second attempt, defendant failed to follow instructions and jumbled the numbers as he was counting down from four.

¶ 21 The recording also shows that defendant failed to follow instruction and complete the walk-and-turn and one-legged stand tests. As to the walk-and-turn test, defendant failed to follow the instruction to take each step heel to toe. During the turn portion, defendant did an about-face turn rather than a pivot step that Brauch had instructed him to perform. When defendant walked back to his starting position, he failed to make heel to toe steps as instructed. As to the one-legged stand test, defendant had to place his foot down on the first attempt to regain his balance. When defendant attempted to try the test again, he restarted his count instead of following Brauch's instruction to continue his count from where he left off on the first attempt. Defendant then stopped the test before Brauch instructed him to do so. Finally, defendant refused to perform a PBT, showing his consciousness of guilt.

¶ 22 Regarding the portions of the tests that were not clearly shown in the video, Brauch testified that while he performed the HGN test defendant's eyes lacked smooth pursuit. Defendant was also reminded to follow the pen with his eyes, but Brauch noticed that defendant could not follow the pen without stopping and looking straight ahead. When Brauch performed the HGN test outside defendant's vehicle, defendant moved his head to follow the pen rather than using only his eyes as instructed.

¶ 23 Considering the above, along with Brauch's initial observation of defendant repeatedly colliding with the curb while maneuvering his vehicle, the odor of an alcoholic beverage emanating from defendant, defendant's red and glassy eyes, and defendant's admission to drinking alcohol, we conclude that the officer had probable cause to place defendant under arrest for DUI. Therefore, we hold that the circuit court erred when it granted defendant's motion to quash arrest and suppress evidence.

¶ 24 III. CONCLUSION

¶ 25 The judgment of the circuit court of Will County is reversed and remanded.

¶ 26 Reversed and remanded.